IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHURCH CREEK CONSTRUCTION, LLC, KEVIN MOLONY, and LARRY ELSEY, as Assignor Plaintiffs, <br><br> and <br><br> MEPKIN PLACE HOMEOWNERS ASSOCIATION, LLC, LAVONIA MITCHELL, individually and on behalf of all other similarly Situation, ANDREW BLALOCK, KELLY BLALOCK, BEN YASCHIK, MARTIN YASCHIK, S. EMORY BULL HIOTT, NORMA F. CALLEN, FARZAN SOODAVAR, AVINA ADAMIVAT, ROBERT P. LEDFORD, JR., CHRISTOPHER MIMS, PATRICK J. MALLARD, ERIC CROTTS, MARY GRAY, NICHOLAS HARGREAVES, JANE F. MITCHELL, JOSHUA SEARS, JULIUS MCMILLAN, LINDA MCMILLAN, STEPHANIE SLAN, and PATRICK J. MALLARD, as Assignee Plaintiffs, <br><br> Plaintiffs, <br><br> vs. <br><br> MT. HAWLEY INSURANCE COMPANY, ESSEX INSURANCE COMPANY, EVANSTON INSURANCE COMPANY, WOOD SPECIAL RISK BROKERS, LLC, and INSURANCE OFFICE OF AMERICA, INC., <br><br> Defendants. | No. 2:17-cv-1339-DCN <br><br> **ORDER** |

    The following matter is before the court on defendant Mt. Hawley Insurance Company's ("Mt. Hawley") motion for partial dismissal and/or a more definitive statement, ECF No. 67, and defendants Essex Insurance Company ("Essex") and

1

Evanston Insurance Company's ("Evanston") (collectively, "Evanston")[1] motion for partial dismissal and/or a more definitive statement, ECF No. 78. For the reasons set forth below, the court grants the motions, dismissing Counts II, IV, and V without prejudice and finding the issues of a more definitive statement as moot.

## I. BACKGROUND

This case arises out of an insurance coverage dispute for an underlying state court judgment. Assignor plaintiff Church Creek Construction LLC is owned by assignor plaintiffs Kevin Molony and Larry Elsey (collective, "Church Creek"). Church Creek constructed Mepkin Place, a residential condominium complex. Assignee plaintiffs are Mepkin Place Homeowner's Association, LLC and individual condominium owners. Defendants have all provided insurance services to Church Creek.

Assignee plaintiffs filed a lawsuit in state court alleging construction deficiencies at Mepkin Place against Church Creek, and judgment for $33,802,788.00 was entered against Church Creek on July 22, 2016 ("underlying judgment"). Assignee plaintiffs then filed a declaratory action suit in state court against Church Creek, Mt. Hawley, and defendant Wood Special Risk Brokers, LLC ("WSRB") to determine whether Mt. Hawley was responsible for providing insurance coverage for the underlying judgment.[2] Mt. Hawley removed the declaratory action to this court.

Mt. Hawley initially challenged assignee plaintiffs' standing to bring this action because they had submitted no proof that Church Creek, the insured, had assigned its

---

[1] Essex merged with Evanston in 2016.
[2] WSRB was an insurance consultant for Church Creek; therefore, the claims against WSRB relate to whether WSRB was negligent for failing to procure insurance coverage.

rights to pursue such an action to assignee plaintiffs. As a result, the assignee plaintiffs sought leave to file an amended complaint to realign Church Creek as assignor plaintiffs (together with assignee plaintiffs, "plaintiffs"). The court held a hearing on the matter and allowed assignee plaintiffs to amend their complaint. However, the court limited discovery at that time to a statute of limitations issue raised by Mt. Hawley.[3] Then plaintiffs filed another motion to amend the complaint so they could add additional defendant insurance companies and eliminate their duty to defend claim, which plaintiffs argue would resolve the statute of limitations issue. The court held a hearing on this motion and allowed the amendment, which added Evanston as a defendant.

The second amended complaint, now the operative complaint, levies the following claims: (1) a declaratory judgment declaring plaintiffs are entitled to coverage under Mt. Hawley's and Evanston's insurance policies for the full amount of coverage up to the amount of the underlying judgment; (2) another declaratory judgment declaring that Mt. Hawley and Evanston are responsible for the entire amount of the underlying judgment because they negligently failed to settle the underlying claim; (3) a bad faith claim against Mt. Hawley and Evanston for denying coverage; (4) a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); (5) reformation of the insurance policies so that plaintiffs are provided coverage in the event the court finds no coverage; and (6) negligence against WSRB and defendant Insurance Office of America, Inc. Mt. Hawley filed a motion for partial dismissal and/or for a more definite statement on November 16, 2018. ECF No. 67. Plaintiffs filed their response, ECF No. 80, and Mt.

---

[3] Both Mt. Hawley and Evanston have raised concerns about whether plaintiff's claims are barred by the statute of limitations; however, neither makes a substantive argument regarding this issue in their motions.

Hawley filed a reply, ECF No. 81. Evanston also filed a motion for partial dismissal and/or for a more definite statement on December 19, 2018. ECF No. 78. Plaintiffs filed their response, ECF No. 82, and Evanston replied, ECF No. 83. The court held a hearing on the motions on February 12, 2019. The motions are ripe for review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

**A. Motion for Dismissal of Counts II, IV, and V**

Evanston and Mt. Hawley (for the purposes of this order, "defendants") argue that Counts II, IV, and V must be dismissed. The court agrees.

**1. Declaratory Judgment for Unreasonable Failure to Settle (Count II)**

In Count II, plaintiffs allege that defendants were given the opportunity to settle the claim for the underlying judgment but were "negligent, careless and reckless in their conduct and unreasonably failed and refused to provide coverage for, participate in and/or settle the claims for an amount within policy limits." Second Am. Comp. ¶ 16. As a result, plaintiffs seek a declaratory judgment declaring that defendants are responsible for payment in full of the entire underlying judgment.

Defendants argue that this claim must be dismissed because (1) the theory under which plaintiffs pursue this claim is a tort theory of liability, not a theory pursued through a declaratory judgment; and (2) defendants never agreed to defend plaintiffs; therefore, they cannot be held liable for unreasonably refusing to settle the claim. Defendants rely on Tyger River Pine Co. v. Maryland Cas. Co., 170 S.E. 346 (S.C. 1933), in which the Supreme Court of South Carolina held that an insured can be entitled to recover excess judgment beyond the policy limits from its insurer if the excess judgment was caused by the insurer's bad faith refusal to settle or defend a case. Id. at 347. This is known as the Tyger River doctrine. This doctrine arises when the insured plaintiff suffers a loss because the insurer "took exclusive control and management of all negotiations for

5

compromise and settlement" of the claim and "negligently, recklessly, willfully, contumaciously, and in bad faith, with a view to its own interests alone, and in disregard of plaintiff's rights and interests, neglected and refused to settle the claim." Id. However, as defendants argue, this is a tort action, not a declaratory judgment action. Id. at 348; see also Jordan v. Allstate Ins. Co., 2016 WL 4367080, at *4 (D.S.C. Aug. 16, 2016), aff'd, 678 Fed. App'x 171 (4th Cir. 2017) ("Under South Carolina law, an insurer that unreasonably refuses to settle a claim with an insured within policy limits is subject to liability in tort."); Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 618 (S.C. 1983) ("[W]e held in Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346 (1933) that an insurer's unreasonable refusal to settle within policy limits subjects the insurer to tort liability."). Therefore, Count II is not properly pleaded as a declaratory judgment.

Plaintiffs respond by arguing that the underlying theory of the Tyger River doctrine is that an insurer must protect its insured, even when it is against the insurer's self-interest, as long as it is reasonable for the insurer to do so. Therefore, plaintiffs argue, defendants cannot refuse to defend plaintiffs' claim and then benefit from not defending the claim. However, this argument simply does not address the declaratory judgment/tort distinction.

In addition, defendants argue that because they never agreed to defend plaintiffs, they are not subject to liability under the Tyger River doctrine. South Carolina courts have not explicitly stated that the Tyger River doctrine does not apply when the insurance company never assumed the defense of the insured, but their discussion of Tyger River assumes that the insurer accepted the defense of the insured. See Miles v. State Farm

Mut. Auto. Ins. Co., 120 S.E.2d 217, 220 (S.C. 1961) (focusing on the insured's bad faith claim instead of the Tyger River claim because the insurer never assumed or undertook control of the insured's claim); see also Snyder v. State Farm Mut. Auto. Ins. Co., 586 F. Supp. 2d 453, 459 (D.S.C. 2008) ("One situation in which South Carolina law does impose a duty to settle is in a liability case in which the insurer assumes the defense of the insured and the insured may potentially be exposed to liability above and beyond the policy limits." (emphasis added)); State Farm Mut. Auto. Ins. Co. v. Arnold, 276 F. Supp. 765, 766 (D.S.C. 1967) ("[I]f the insurer, in undertaking the defense of a suit covered by its liability policy, negligently defends or unreasonably refuses to settle within policy liability limits, it is liable in tort to the insured for the amount of the judgment against him in excess of the policy limit." (emphasis added)). In State Farm Mut. Auto. Ins. Co., the court distinguished a claim for refusing to defend an insured and a Tyger River claim by explaining that in the first claim, the insurer has denied coverage, while in the other, the insurer conceded coverage. 276 F. Supp. at 766. This suggests that an insurance company must concede coverage and assume the defense of its insured before it can be liable under the Tyger River doctrine. Here, defendants never undertook the defense of Church Creek. They simply denied coverage instead of undertaking coverage and failing to reasonably settle the claim.

Plaintiffs respond to this argument by arguing that if the court declares that they are entitled to coverage under the policy, which they seek in Count I, then plaintiffs' allegations in Count II are proper in seeking a declaration that coverage should be provided in excess of policy limits because defendants' actions were unreasonable, negligent, and in bad faith. However, they cite to no legal basis for the court to be make

7

such a declaration. Aside from this count being improperly pleaded as a declaratory judgment, in order for defendants to be liable in excess of the policy limits for their alleged negligence, defendants need to have assumed defense of plaintiffs' claim. Defendants did not. Therefore, the court dismisses Count II without prejudice.

### 2. SCUTPA Claim (Count IV)

Next, defendants argue that Count IV must be dismissed because a SCUTPA claim cannot be brought against an insurance company and by an assignee. SCUTPA states that "[t]his article does not supersede or apply to unfair trade practices covered and regulated under Title 38, Chapter 57, §§ 38-57-10 through 38-55-320." S.C. Code Ann. § 39-5-40(c). The referenced statute regulates the trade practices of insurance businesses. Therefore, courts have dismissed SCUTPA claims as a matter of law when the claim relates to an insurer's alleged unfair trade practices. See Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Grp., Inc., 2014 WL 4402800, at *4 (D.S.C. Sept. 3, 2014) ("Because this cause of action for unfair trade practices pertains to the business of insurance, this claim is not regulated under SCUTPA and is therefore dismissed as a matter of law."); K & M Merch., LLC v. Am. W. Home Ins. Co., 2010 WL 597217, at *2 (D.S.C. Feb. 16, 2010) (dismissing the plaintiff's SCUTPA claim because "[i]t is undisputed that the plaintiff's claim under the SCUTPA relates solely to a dispute over insurance coverage. Such a claim is not supported by the terms of the Act itself nor by the relevant cases interpreting the Act.").

Plaintiffs argue that this claim should not be dismissed because portions of the Mt. Hawley insurance policy at issue here have not been approved and are therefore not "covered and regulated under Chapter 57." ECF No. 80 at 5. Plaintiffs cite to and attach

to their response a trial court order entered in a state case, Daniel Island Riverside Developers, LLC v. Mt. Hawley, to show that the Mt. Hawley policy has not been approved.[4] The order explains that Mt. Hawley is a non-admitted surplus lines insurance company, and the South Carolina Department of Insurance does not regulate or approve insurance forms of non-admitted insurance companies.

Mt. Hawley responds to this argument by stating that there is no exclusion for surplus lines insurance carriers in the South Carolina insurance statute. The statute states that "[n]o person may engage, in this State, in any trade practice which is defined in this chapter as, or determined pursuant to this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." S.C. Code Ann. § 38-57-30. The statute defines "person" as "any individual, corporation, association, partnership, reciprocal exchange, interinsurer, Lloyd's insurer, fraternal benefit society, and any other legal entity engaged in the business of insurance, including agents, brokers, and adjusters." Id. § 38-57-20. Mt. Hawley is a legal entity engaged in insurance business; therefore, the insurance statute appears to apply to it. Indeed, the second amended complaint specifically alleges that defendants are "engaged in the business of providing insurance coverage." Second Am. Comp. ¶¶ 3–5. Moreover, Mt. Hawley explains that the state court order on which plaintiffs rely is irrelevant and was vacated,

---

[4] This case was a declaratory judgment, breach of contract, and bad faith action brought against Mt. Hawley by different plaintiffs related to a different condominium complex. A bench trial was held in 2013, where Judge J.C. Nicholson ruled in favor of the plaintiffs. After the trial, Mt. Hawley moved to amend its answer to add defenses to conform to evidence presented at trial. The order cited by plaintiffs denied that motion and found that Mt. Hawley had a duty to defend and indemnify and breached its obligation of good faith. However, this order was vacated and withdrawn.

but even if it had not been vacated, the order made no finding or ruling that Mt. Hawley was subject to SCUTPA.

With regard to Evanston, plaintiffs make the same argument in their response as they did in their response to Mt. Hawley's motion, including citation to the state court order. However, that argument was specifically tailored towards Mt. Hawley, and Evanston was not involved in the state court order. Plaintiffs make no argument about why SCUTPA should apply specifically to Evanston. Based on the parties' arguments and a reading of S.C. Code Ann. §§ 38-57-20–38-57-30, it appears defendants are regulated by Title 38, Chapter 57; therefore, a SCUTPA claim cannot be made against them.[5] Therefore, the court dismisses Count IV without prejudice.

While the court need not reach defendants' assignment argument, it notes that defendants argue that a SCUTPA claim may not be brought by an assignee. Defendants rely on a single case, Reynolds v. Ryland Group, Inc., 531 S.E.2d 917 (S.C. 2000), in which the Supreme Court of South Carolina considered a question certified by this court as to whether a SCUTPA claim may be brought against a defendant home builder and seller by plaintiffs who bought their homes from the original homeowner, not the defendant. Id. at 333. The court answered the question in the negative and held that the homeowners could not bring a SCUTPA claim against a homebuilder when they did not buy the house from the homebuilder. Id. at 335. Whether a SCUTPA claim may be brought by a subsequent purchaser is a different inquiry than whether a SCUTPA claim

---

[5] Plaintiffs may take 30(b)(6) depositions of defendants limited to the purpose of determining whether defendants are regulated by Title 38, Chapter 57 of the Code of Laws of South Carolina. Because this claim is dismissed without prejudice, if plaintiffs learn that defendants are not regulated by Title 38, then they may move to revive this claim.

may be brought by an assignee. It appears that South Carolina courts have not confronted the issue of whether a SCUTPA claim may be brought by an assignee. However, as plaintiffs point out, the second amended complaint reserves some of assignor plaintiffs' rights. Therefore, if the SCUTPA claim were proper, assignor plaintiffs could bring the claim, even if assignee plaintiffs could not.

### 3. Reformation Claim (Count V)

Defendants argue that the reformation claim must be dismissed because an insurance policy can only be reformed based on mutual or unilateral mistake, and plaintiffs allege neither. Plaintiffs argue that reformation is appropriate because they have sufficiently alleged that Mt. Hawley intended to give the appearance of liability coverage for property damage and ongoing completed coverage in its insurance policy but then subsequently failed to provide coverage. Again, plaintiffs cite to the vacated state court order in Daniel Island Riverside Developers v. Mt. Hawley as support that Mt. Hawley "ma[de] their policies appear to provide certain property damage coverage and limits of insurance for that coverage" in order to make its insurance product marketable. ECF No. 80 at 6 (citing ECF No. 80-1 at 38).

"Reformation is the remedy by which writings are rectified to conform to the actual agreement of the parties . . . [It] is available on the ground of mistake or misunderstanding as well as duress and related misconduct." Crewe v. Blackmon, 345 S.E.2d 754, 757 (S.C. Ct. App. 1986). In South Carolina, a court may reform a contract based on mistake when the mistake was mutual or unilateral. Shaw v. Aetna Cas. & Sur. Ins. Co., 262 S.E.2d 903, 905 (S.C. 1980). At the hearing, plaintiffs did not clarify which type of mistake they allege, so the court will discuss both mutual and unilateral mistake.

11

"A mistake is mutual where both parties intended a certain thing and by mistake in the drafting did not obtain what was intended." George v. Empire Fire & Marine Ins. Co., 545 S.E.2d 500, 504 (S.C. 2001). In an insurance case, mutual mistake may be sufficiently pleaded when the allegations may lead the court to find that the parties both misunderstood underlying facts that affected the parties' understanding of the scope of insurance policy's coverage. LM Ins. Corp. v. Contingent Res. Sols., LLC, 2016 WL 728700, at *6 (D.S.C. Feb. 24, 2016). Here, plaintiffs simply have not alleged that plaintiffs and defendants both intended to include something in the insurance policies at issue but did not do so because of a mutual misunderstanding.

In contrast to reformation for a mutual mistake, reformation for a unilateral mistake is appropriate when the mistake "has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right" or when the mistake is "is accompanied by very strong and extraordinary circumstances, showing imbecility or something which would make it a great wrong to enforce the agreement, sustained by competent testimony of the clearest kind." Shaw, 262 S.E.2d at 905. Here, plaintiffs seem to be arguing that defendants induced plaintiffs into purchasing the insurance policy by mispresenting that the policy would provide liability coverage for property damage and ongoing completed coverage, when defendants subsequently did not provide coverage. However, the second amended complaint contains no allegations related to defendants inducing plaintiffs to purchase the insurance policies. It simply alleges that "Defendants[,] for valuable consideration, issued insurance policies which provided liability insurance coverage, commercial

general liability policies and excess liability policies cover the judgment set forth in paragraph 2 above." Second Am. Comp. ¶ 11. The second amended complaint then alleges that the underlying judgment resulted from Church Creek's conduct that was covered by the insurance policies, but defendants denied coverage. Plaintiffs also allege that "upon issuance of its policies of insurance referred to above, Defendants Mt. Hawley, Essex and Evanston Insurance Companies, were obligated to act in good faith and in a reasonable manner in providing protection afforded by said insurance policies . . . ." Id. ¶ 20. Plaintiffs then allege that defendants acted in bad faith and unreasonably "by failing to afford the protection that the insured was and is entitled to." Id. ¶ 21. Yet none of these allegations go to defendants <u>inducing</u> plaintiffs to purchase the insurance policies, whether it be through fraud, deceit, misrepresentation, or concealment. Even taking these allegations as true, they do not sufficiently plead the existence of unilateral mistake in forming the insurance policies. Therefore, the court dismisses Count V without prejudice.

### B. Motion for a More Definite Statement

Under Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Defendants request clarification about certain terms used in the second amended complaint that they argue are so vague and/or ambiguous that defendants cannot respond to the allegations. Plaintiffs generally respond that the allegations in the complaint are sufficient to place defendants on notice of the claims and are essentially the same as the original state court complaint, which Mt. Hawley answered. The terms were clarified at

the hearing on the motion; therefore, the court need not address the parties' arguments and finds the issues as moot.

## IV. CONCLUSION

For the reasons set forth above, the court grants the motions.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 19, 2019
Charleston, South Carolina**