IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHURCH CREEK CONSTRUCTION, LLC, KEVIN MOLONY, AND LARRY ELSEY, AS ASSIGNOR PLAINTIFFS, ) ) ) ) AND ) ) MEPKIN PLACE HOMEOWNERS ASSOCIATION, LLC; LAVONIA MITCHELL, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED, ANDREW BLALOCK, KELLY BLALOCK, BEN YASCHIK, MARTIN YASCHIK, S. EMORY BULL HIOTT, NORMA F. CALLEN, FARZAN SOODAVAR, AVINA ADAMIVAT, ROBERT P. LEDFORD, JR., CHRISTOPHER MIMS, PATRICK J. MALLARD, ERIC CROTTS, MARY GRAY, NICHOLAS HARGREAVES, JANE F. MITCHELL, JOASHUA SEARS, JULIUS MCMILLAN, LINDA MCMILLAN, STEPHANIE SLAN AND PATRICK J. MALLARD, AS ASSIGNEE PLAINTIFFS, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) PLAINTIFFS, ) ) V. ) ) MT. HAWLEY INSURANCE COMPANY; ESSEX INSURANCE COMPANY, EVANSTON INSURANCE COMPANY, WOOD SPECIAL RISK BROKERS, LLC; AND INSURANCE OFFICE OF AMERICA, INC., ) ) ) ) ) ) ) ) DEFENDANTS. ) | C/A: 2:17-cv-01339-DCN<br><br>**MT. HAWLEY INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT AS TO COUNT I AGAINST MT. HAWLEY INSURANCE COMPANY** |

**TO: THOMAS B. PRITCHARD, ATTORNEY FOR CHURCH CREEK CONSTRUCTION, LLC, LARRY ELSEY AND KEVIN MALONEY and GEDNEY M. HOWE, III, JOHN C. HAYES, IV & I. KEITH MCCARTY, AND DANIEL S. SLOTCHIVER, ATTORNEYS FOR REMAINING PLAINTIFFS**

## SUMMARY OF ARGUMENT

Mt. Hawley Insurance Company ("Mt. Hawley") hereby submits this Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment as to Count I Against Mt. Hawley Insurance Company ("Motion"). In this Motion, Plaintiffs assert that certain exclusions contained in policies of insurance by Mt. Hawley Insurance Company ("Mt. Hawley") to Church Creek Construction, LLC ("Church Creek") create an ambiguity within the policy and therefore, the policy should be interpreted by this Court to provide coverage for a judgment entered against Church Creek ("Judgment") in an action filed against it by Mepkin Place Homeowners Association, LLC, and others (collectively the "HOA"). Plaintiffs' do not contend that the exclusions themselves are ambiguous or unclear, but instead contend that they conflict with the insuring agreement, the limits set forth on the policy declarations pages, the definitions within the policy, and the reasonable expectations of the insured.

Mt. Hawley opposes this motion as (1) Plaintiffs' assertion that the insuring agreement, declarations pages, definitions page, and the expectations of Church Creek create an ambiguity within the policy is not supported by law or fact and are opposed by law and facts; (2) the doctrine of reasonable expectations is not applicable in this action and the facts do not support extension of coverage under this theory; (3) the Judgment in the underlying litigation does not contain sufficient facts to establish that any property damage occurred within the periods covered by the subject policies; (4) multiple other exclusions may preclude coverage for all or part of the Judgment amount; and (5) there is an issue of fact as to whether the Judgment is enforceable against Mt. Hawley. Additionally, because Plaintiffs motion does not establish that there is any coverage of their claim under the underlying general liability policies issued by Mt. Hawley, it also fails to establish that there is any coverage for the claim under the Mt. Hawley excess policies. Finally,

while Mt. Hawley contends that the Court should not look beyond the enforceable language of the policies which clearly exclude the damage found in the Judgment, because the Plaintiffs' motion relies on affidavits of witnesses who have not been deposed, it is premature for the court to consider a motion on these grounds.

Additionally, as Plaintiffs' Motion does not contest that any property damage found in the Judgment would be excluded by particular exclusions found in the subject policies, Mt. Hawley has filed Mt. Hawley Insurance Company's Motion for Judgment on the Pleadings As to Count I (Declaratory Judgment) and a memorandum supporting the same  (collectively "Mt. Hawley Coverage Motion").  (ECF Nos. 135 and 135-1).

## BACKGROUND

This is an action filed by Plaintiffs seeking, in addition to other claims, a declaration of coverage for  the Judgement issued in a construction defect action involving  a condominium conversion project known as "Mepkin Place."  (ECF 66-1).  The construction defect action was filed against Church Creek and others in South Carolina State Court and captioned "Mepkin Place HOA, et al., v. Mepkin Convertors, LLC, et al.," C/A No. 2011-CP-10-7717 ("Underlying Lawsuit").  In the Underlying Lawsuit the HOA sought damages resulting from faulty work of Church Creek and its subcontractors during the conversion project.  *Id*.  Church Creek initially appeared in the Underlying Lawsuit and was represented by counsel.  Its counsel was later relieved by consent, but Church Creek failed to comply with the court's deadline to obtain new counsel and its answer was struck, leaving it in default.  *Id*. at P. 2.  A damages hearing took place on May 20, 2016 where Church Creek hired new counsel.  *Id*.  The resulting Judgment was entered on July 22, 2016.  *Id.*  The Judgment makes findings that include "that as a result of the defective and incorrect

3

work performed by Church Creek or its agents, water has leaked into the buildings and caused rot and deterioration of the building structures." *Id*. at ¶ 10.

Mt. Hawley issued four (4) policies of insurance for two (2) consecutive one-year policy periods beginning October 18, 2005 and terminating October 18, 2007 to Church Creek. (ECF Nos. 92-1, 92-2, 92-3, and 92-4.) Two of the policies are general liability policies and may be referred to as the "Mt. Hawley GL Policies." (ECF Nos. 92-1 and 92-3). Two of the policies are excess policies and may be referred to as the "Mt. Hawley Excess Policies." (ECF No. 92-2 and 92-3) (The Mt. Hawley GL Policies and the Mt. Hawley Excess Policies may also be referred to collectively as the "Mt. Hawley Policies.") Mt. Hawley issued a declination of coverage for the Underlying Lawsuit to Church Creek on August 28, 2012. (ECF No. 92-7). Mt. Hawley did not participate in the defense of Church Creek in the Underlying Lawsuit.

The HOA filed this action against Mt. Hawley and the retail broker involved in the sale of the Mt. Hawley GL and Excess Policies, Wood Special Risk Brothers, LLC ("Wood Brothers"). The complaint was later amended to include the retail agent for the sale of the Mt. Hawley GL and Excess Policies, Insurance Office of America, Inc. ("IOA") and a second insurance carrier for Church Creek.

The HOA and Church Creek also amended the complaint to bring this action as joint Plaintiffs pursuant to an assignment. (ECF Nos. 23-2 and 30). Under the terms of the assignment dated September 29, 2017 (after claims asserting the assignment had initially been plead), the HOA and Church Creek share in the proceeds of this lawsuit. (ECF No. 23-2*).*

Certain claims in this matter have already been dismissed. (ECF No. 90). In a continuing effort to avoid dismissal of claims other than the declaratory judgment action under the applicable statute of limitations, Plaintiffs have amended their complaint to withdraw claims based on the

4

duty to defend, and even filed a second lawsuit in this Court, specifically C/A No. 2:19-cv-01877-DCN ("Second Lawsuit"). A motion to dismiss the Second Lawsuit is pending. Mt. Hawley Insurance Company's Notice of Motion and Motion for Judgment on the Pleadings as to Plaintiffs' Count III for Bad Faith in this action based on the expiration of the applicable statute of limitations is also pending. (ECF No. 106).

As a decision on the issue of the statute of limitations will significantly impact the scope of discovery in this matter, no depositions have been taken in this matter by any party. Scheduling issues including a deadline for defendants to name experts and a discovery deadline are to be revisited by the Court when a ruling is issued on the pending motions for judgment on the pleadings filed by both Mt. Hawley and Essex Insurance Company, Evanston Insurance Company ("Evanston/Essex") seeking dismissal of claims including bad faith based on the expiration of the statute of limitations. (ECF Nos. 120).

<u>**STANDARD FOR SUMMARY JUDGMENT**</u>

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed R. Civ. P. 56. "It is well established that summary judgment should be granted 'only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts.'" *Builders Mut. Ins. Co. v. Lacey Const. Co., Inc.*, C/A No. 3:11-cv-400-CMC, 2012 WL 1032539 at *7 (D.S.C. March 26, 2012) *citing Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987). Summary judgment is appropriate only after adequate time for discovery. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996).

"The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to

be drawn therefrom in the light most favorable to the nonmoving party." *Id.* citing *United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate 'specific facts showing that there is a genuine issue for trial.'" *Id. citing* Fed. R. Civ. P. 56(e); *and Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

First, the language of the Mt. Hawley Policies and the Judgment establish that, as a matter of law there is no coverage for the Judgment under the Mt. Hawley Policies. In their motion, Plaintiffs argue that certain exclusions in the Mt. Hawley GL Policies, specifically h.(5), h.(6) and j, create an ambiguity within the policies and entitle them to summary judgment granting them the policy limits, not because the exclusions are unclear, but specifically because these exclusions (1) conflict with the insuring agreements, limits on the declaration page, and definitions within the policies; and (2) they do not reflect the reasonable expectations of the insured. This assertion is not supported by law or fact and is opposed by both law and fact.

Under the plain language of the policies, these exclusions do not create an ambiguity. Not only should Plaintiffs' motion for summary judgment be denied, but as set forth in the Mt. Hawley Coverage Motion, Mt. Hawley is entitled to a declaration that there is no coverage for the claim.

Plaintiffs also cannot establish that they have met their burden of proof to establish that any damage found in the Judgment occurred within the policy periods of the Mt. Hawley GL Policies. There are also multiple additional exclusions and terms that preclude coverage for all or part of the Judgment amount, as well as an issue of fact as to whether the Judgment is enforceable

6

against Mt. Hawley.  Plaintiffs also set forth no basis to trigger coverage under the Mt. Hawley Excess Policies.  Finally, if the Court finds that there is a basis to look beyond the policy language and the Judgment to determine coverage (which Mt. Hawley contends it should not), it should not do so until the depositions of the witnesses making supporting affidavits have been completed.

**I.      The exclusions do not create an ambiguity within the policy.**

Plaintiffs offer no argument that exclusions h.(5), h.(6), and j do not, under their plain language, exclude all damage found in the Judgement entered in the Underlying Action. Therefore, Mt. Hawley has filed the Mt. Hawley Coverage Motion, incorporated herein by reference, which establishes that all damage found in the Judgment falls within these three exclusions, and therefore Mt. Hawley is entitled to judgment as a matter of law. (ECF Nos. 135 and 135-1).  Instead, Plaintiffs assert that they are entitled to summary judgment not because these exclusions don't apply or that they are unclear, but because the exclusions are either unenforceable or that they create an ambiguity within the policy.  These arguments have no merit.

Exclusions of this type are enforceable.  This District Court has enforced exclusions containing the same language in other policies issued by Mt. Hawley and found that this language precluded coverage for damages resulting from the negligent work of a general contractor.  *See* Order in *Mt. Hawley Ins. Co. v. Tremont Construction Co., Inc., et al.*, C.A. No. 9:18-cv-03240-RMG (D.S.C. August 27, 2019) (Judgment on the Pleadings granted to Mt. Hawley finding no duty to defend or indemnity a general contractor in construction defect action), attached hereto as Exhibit "A."

Exclusions such as these, known as "business risk" exclusions that are tailored to a particular business, are "widely recognized as a valid limitation on coverage in general liability policies." *Vari Builders, Inc., v. U.S. Fid. & Guar. Co.*, 523 A.2d 549, 551, (Del Super. Ct. 1986).

South Carolina Courts have upheld such exclusions. In *B.L.G. Enterprises, Inc., v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (1999, the South Carolina Supreme Court held that a Dram Shop exclusion for all injury due to the sale of alcohol was enforceable against a tavern. The court held that because other coverage, such as a slip and fall that was not the result of the service of alcohol, remained intact the exclusion was enforceable. The Court stated, "Policies providing products liability coverage may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business." *Id. citing Couch on Insurance* 3d § 130:14 (1997). Likewise, in this matter exclusions h.(5), h.(6) and j exclude coverage for property damage to the contractor's work or any other property arising out of or related to their work while providing coverage for certain claims for damage to property other than the project itself that occur during ongoing operations and certain claims for bodily injury.

South Carolina Courts have held that exclusions which are very similar to those in the Mt. Hawley GL Policies bar coverage for construction defect actions. *See e.g. Bennet and Bennett Construction Inc., v. Auto Owners Insurance Company,* 747 S.E.2d 426 (S.C. 2013) ("Your work" exclusion precluded coverage for subcontractor of claim for damage caused by subcontractor's work). Other similar exclusions that remove coverage for claims for defective construction in policies of insurance issued to contractors have been upheld under South Carolina law. For example, Builders Mutual Insurance Company's endorsement CG 22 94 has been consistently upheld as enforceable under South Carolina law. *See Builders Mutual Ins. Co. v. Carolina Custom Homes of Charleston, Inc.*, C/A No. 2:14-cv-01261-RMG, 2015 WL 12843210 (D.S.C. February 11, 2015)("the Court finds that the CG2294 exclusion, the faulty workmanship exclusion and the "your work" exclusion preclude coverage for the damages alleged" and Builders Mutual had no duty to defend, indemnify, or provide coverage for the claim); *Builders Mut. Ins. Co. v. Oak Tree*

8

*Homes, Inc.*, 867 F.Supp.2d 800 (D.S.C. 2012)(Builders Mutual had no duty to indemnify a judgment under the Your Work exclusion in policy with 2294 Endorsement); *Builders Mut. v. Lacey*, 2012 WL 1032439 (Policy with Your Work exclusion and 2294 endorsement did not provide coverage for faulty workmanship); *Builders Mutual v. Kalman,* C/A No. 2:07-cv-3609 PMD, 2009 WL 4807003 (D.S.C. December 8, 2009)(Court upheld policy with 2294 Exclusion and found that it did not provide coverage for claims for faulty workmanship and defective construction resulting in water damage). *See also Jessco, Inc. v. Builders Mut. Ins. Co.*, 472 Fed.Appx. 225 (C.A. 4 (S.C.) 2012)(Fourth Circuit recognized, "The primary purpose of [the Your–Work] exclusion is to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business...." but found the 2294 exclusion not applicable). As these exclusions are clearly enforceable, Plaintiffs are not entitled to summary judgment.

Plaintiffs also cannot establish and do not contend that the exclusions themselves are unclear or ambiguous. Instead, they assert only that the "insuring agreement, declarations page, limits of insurance and definitions provide[] coverage for Products-Completed Operations, which conflict with exclusions argued by Mt. Hawley." (ECF. NO. 133-1, P. 7). Plaintiffs assert that "the policy is, therefore, ambiguous requiring a conclusion that 'property damage' for products completed operations is covered under the policy'". *Id.*[1] This argument is not supported by law or fact and should be rejected.

---

[1] The only authority offered by Plaintiffs to support their contention that the insuring agreement, declaration pages, and definitions create an ambiguity within the policies is a comparison between the Mt. Hawley Policies in this matter to those that were the subject of an Order issued by Judge Roger Young in the Civil Action Number 2010-CP-08-4318. (ECF 80-1). While it is true this Order was vacated after settlement terms were reached in that matter, the Order was vacated by way of granting Mt. Hawley's Rule 59 Motion which raised issues with both the factual and legal conclusions made in that Order. (ECF No. 81-1). This Court has previously acknowledged that Judge Young's Order is not binding in these proceedings. *See Builders Mutual Ins. Co., v. Bob Wire Electric, Inc.,* 817 S.E.2d 807 (Ct. App. 2018)("[A] vacated judgment carries no preclusive effect under *res judicata* or any other doctrine known to us").

### A.     The exclusions do not conflict with the insuring agreement.

The inclusion of exclusions in an insurance policy does not create a conflict with its insuring agreement. The very purpose of an exclusion is to take away portions of coverage otherwise granted under the insuring agreement of the policy. It is recognized that a "CGL policy grants the insured broad liability coverage for property damage and bodily injury which is then narrowed by a number of exclusions." *Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 546 (S.C. 2009). "[I]nsurers have a right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 104-5 (S.C. Ct. App. 2006).

The Mt. Hawley GL Policies both contain the following language in their insuring agreements:

### 1.     *Insuring Agreement*

*We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.*

The Mt. Hawley GL Policies then continue:

### 2.     *Exclusions*

*This Insurance does not apply to:*

[LIST OF EXCLUSIONS FOLLOWS]

Mt. Hawley Policies (ECF No. 92-1 at P. 5 and 92-3 at P. 6.)

Therefore, under the language of the insuring agreement in the Mt. Hawley Policies and the exclusions that follow, Mt. Hawley has every right to include exclusions, including h.(5), h.(6) and j.

### B.     The declaration pages and policy limits do not render the Mt. Hawley Policies ambiguous.

10

The inclusion of a Products-Completed Operations Aggregate Limit of $1 Million limit dollars and the definition of the Products-Completed Operations hazard do not create an ambiguity within the policy. First, the exclusions h.(5), h.(6), and j do not apply to claims for "bodily injury" in the Products-Completed Operations hazard to which the $1 Million limit shown on the declarations page would apply. Therefore, the "suggestions" in the ISO Circular identified and referenced in the Affidavit of Bryan Tilden filed by Plaintiffs in support of their motion would not be applicable to the Mt. Hawley GL Policies, but would only potentially apply to policies that provide no coverage for Products-Completed Operations hazard.[2] (ECF 133-5).

Second, the limits set forth on the Declarations Page and the definition of the Products-Completed Operations do not grant coverage and therefore create no ambiguity. Under South Carolina law an ambiguity cannot be created by taking one provision of the policy out of context. The agreement must be read in its entirety and if the intent of the policy is clear from a reading of all the terms, there is no ambiguity. *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 336 S.C. 542, 550, 520 S.E.2d 820, 824 (Ct. App. 1999). All of the policy provisions should be considered, "and one may not, by pointing out a single sentence or clause, create an ambiguity." *Stewart v. State Farm Mut. Auto. Ins. Co*., 341 S.C. 143, 150-51, 533 S.E.2d 597, 601 (Ct. App. 2000) (*quoting Yarborough v. Phoenix Mut. Life Ins. Co*., 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976)). The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract. *Id*.

---

[2] Mr. Tilden's affidavit makes no assertion that the referenced ISO Circular has been adopted into law in the form of code or regulation and also makes no assertion that it is a standard followed in the insurance industry. Mr. Tilden also makes conclusory opinions regarding coverage. Expert reports which make conclusory application of law to facts and confuse standards should not be considered in a motion for summary judgment. *See Builders Mutual v. Lacey*, 2012 WL 1032439 at *7.

11

The definitions section of the policy is just that – a section of the policy that defines terms used within the policy, including the defined term "products-completed operations". The declaration page sets forth limits of insurance, but refers the insured to the schedule of forms and endorsements that make up the policy to determine what is covered by the policy. (ECF 92-1, P. 4, and 92-3, P. 4). The limits merely define that maximum amount that the policy will pay for certain hazards. The definitions are not by themselves a grant of coverage.

Courts have expressly refused to allow a declarations page to create an ambiguity in an insurance policy. *McGair v. Am. Bankers Ins. Co.*, 593 F.3d 94 (1st Cir. 2012). The logic behind this is simple: If the brief and summary terms of a declarations page alone can create an ambiguity when compared to the full terms of a policy, there could never be any exclusions or limitations in a policy that do not appear on the declaration page, meaning that the entire policy would have to be included on the declarations page. As noted in *Zacarias v. Allstate Ins Co.*, 775 A.2d 1262, at 1270 (N.J Sup Ct. 2001);

> **In sum, an insurance contract is not per se ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented.** A rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy, or to define each term every time it is used. That proliferation of fine print would itself demand strenuous study and run the risk of making insurance policies more difficult for the average insured to understand. (emphasis added)

The similar issue is present here. It would be impossible for carriers to reference every limitation, exclusion or exception on a declarations page or its stated definitions. That is why the law requires that the policy be interpreted as a whole. Neither the declarations page nor stated definitions make the Policies ambiguous and Plaintiff's motion for summary judgment must be denied.

Because the policy is not ambiguous and is enforceable, not only should Plaintiffs' Motion be denied, but as set forth in the Mt. Hawley's Coverage Motion, Mt. Hawley is entitled to a declaration that there is no coverage for the Judgment under the Mt. Hawley Policies.

**II.     The doctrine of reasonable expectations does not extend coverage in this matter.**

Plaintiffs assertion that the doctrine of reasonable expectations supports a finding of ambiguity or extended coverage within the policy language is not supported by South Carolina law.  To support this argument, Plaintiffs have filed the affidavit of Kevin Molony, in which Mr. Molony asserts that Church Creek "reasonably expected its Mt. Hawley policies to provide coverage for products completed operations property damage" and it is Church Creek's "understanding and expectation of the policies is that the damage to the Mepkin properties is a covered loss under the policy."  ("Molony Affidavit," ECF No. 133-2).  This affidavit does not support an extension of coverage beyond the policy language under the doctrine of reasonable expectations and does not entitle Plaintiffs to summary judgment.

While South Carolina has recognized the doctrine of reasonable expectations as an "interpretive tool, the doctrine cannot be used to alter the plain terms of an insurance policy." *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 407 (S.C. 2014).  In *Bell*, the Court stated,

> South Carolina courts have a long history of formalistic interpretation with respect to all contracts and have repeatedly held that the "[i]nsurance policies are subject to general rules of contract construction," and therefore, we "must enforce, not write contracts of insurance and ... must give policy language its plain, ordinary and popular meaning" and "should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." *Gambrell v. Travelers Ins. Cos.,* 280 S.C. 69, 70, 310 S.E.2d 814, 816 (1983) (citations omitted); *see also USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008). Thus, "[w]hen a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999).
>
> Our jurisprudence does not support the creation of a substantive right in reasonable expectations. *Id.*

Thus, while the South Carolina Supreme Court did recognize that the doctrine of reasonable expectations may be used as an interpretive tool in certain circumstances, it may not be used to alter the plan terms of an insurance policy.

Courts interpreting the doctrine have consistently refused to allow the doctrine to alter plain and unambiguous language within insurance policies. *See Evanston Ins. Co. v. R and L Development Corp*, LLC, C/A No. 5:12-02750-JMC, 2014 WL 7148715 at *3 (D.S.C. Dec. 15, 2014)(In enforcing an exclusion for water damage the District Court stated, "Bell constrains courts to only apply the doctrine of reasonable expectations where the policy limitations are unclear and ambiguous"); *Allstate Property and Casualty Insurance Company v. English*, C/A No. 4:16-3404-RBH-KDW, 2017 WL 11297114 at *7 (D.S.C., Nov. 20, 2017)("The [Court] will not consider [the insured's] arguments as to the reasonable expectations of [the policies] absent a determination that the Policy is ambiguous and could benefit from that type of evidence").

### A. Plaintiffs set forth no basis for this Court to look to extrinsic evidence in this matter to extend coverage beyond the policy language.

The Plaintiffs do not establish a legal basis to consider evidence of the insured's reasonable expectations to extend coverage. The Court may not even look to the reasonable expectations of the insured absent certain findings. In *Bell*, 757 S.E.2d at 407, the South Carolina Supreme Court set forth three situations where the court may look to the reasonable expectations of the insured to extend coverage: "[T]he Court will look to the reasonable expectations of the insured at the time when he entered into the contract (1) if the terms thereof are ambiguous or conflicting, or (2) if the policy contains a hidden trap or pitfall, or (3) if the fine print takes away that which has been given by the large print. However, "the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language." *State Farm Fire and Casualty Company v. Morningstar Consultants*, Inc., C/A No. 6:16-01685-MGL, 2017 WL

2265919 at *2, (D.S.C. May 24, 2017)(citation omitted) (internal quotation marks omitted). Plaintiff cannot meet any of these three conditions.

First, as set forth above, the policies are not ambiguous or conflicting. Plaintiffs make no argument that the language of the exclusions is conflicting, ambiguous or unclear. Instead, they argue only that the exclusions conflict with the insuring agreement, the declaration page, and the definitions, which, as set forth above, do not create ambiguity or conflict as a matter of law.

Second, the policies do not contain hidden traps, pitfalls or fine print. A reading of the Mt. Hawley GL Policies shows that the entire policy form is printed in the same font and in the same size, with the exception of headings, which are in bold. (ECF Nos.92-1 and 92-3). All exclusions, including h.(5), h.(6) and j are printed in the same font as the insuring agreement. The heading "Exclusions" is in bold print and is also located on the first page of the policy form, which is the same page where the insuring agreement appears. *Id*. Mr. Molony's affidavit does not even assert that he (or anyone at Church Creek) was mis-lead by the Mt. Hawley GL Policy language or form as he does not even assert that he (or anyone at Church Creek) read the policies, which he had a duty to do[3]. Had a representative of Church Creek read the language of the policy, the exclusions would have been seen. "[T]he doctrine of reasonable expectations, which is essentially that the objectively reasonable expectations of insureds as to coverage will be honored even though a careful review of the terms of the policy would have shown them otherwise, *has been rejected in South Carolina.*" *Ex Parte United Services Auto. Ass'n*, 614 S.E.2d 652, 654 (S.C. App. 2005).

---

[3] *See Lewis v. Omni Indem. Co.*, 970 F.Supp.2d 437 (D.S.C. 2019)(Magistrate's report and recommendation included, "It is well settled in South Carolina that an insured has the duty of reading his insurance policy and of acquainting himself with its contents. Failure to do so will prevent him from avoiding the written contract on the grounds that he did not know its terms.") *citing Provident Life & Acc. Ins. Co. v. Anderson*, 166 F.2d 492 (4th Cir.1948) (*citing Able v. Equitable Life Assur. Soc. of the United States*, 186 S.C. 381, 195 S.E. 652 (1938)); *see also Walpole v. Great American Ins. Companies*, 914 F.Supp. 1283, 1291 (D.S.C.1994) ("Plaintiffs cannot rely on the representations of others as to the policy's contents. An insured has a duty to read the policy he purchases and to abide by its plain terms."); *see also Doub v. Weathersby-Breeland Ins. Agency*, 233 S.E.2d (S.Ct. 1977) (Directed verdict in favor of insurer upheld because Plaintiff had not read the language of the policy).

As there is no ambiguity or hidden trap, interpretation of the Mt. Hawley Policies must be limited to the policy language.

**B.      Even if considered, the Molony Affidavit does not entitle Plaintiffs to a finding of coverage in this matter.**

While Plaintiffs have presented no basis to warrant the consideration of extrinsic evidence to interpret the Mt. Hawley Policies, even if the Court considers the Molony Affidavit, which it should not, it provides no basis on which to expand coverage in this matter.  First, where a party seeks to apply the illusory coverage doctrine, the conflict must be present from the face of the policy.  *East Bridge Lofts P.O.A., Inc., v. Crum & Forster Specialty Ins. Co.*, C/A No. 2:14-cv-2567-RMG, 2015 WL 12831694 (D.S.C. Sept. 22, 2015) *citing Isle of Palms Pest Control Co., v. Monticello Ins. Co.*, 459 S.E.2d 318 (S.C. Ct. app. 1994), *writ granted in part on other grounds, decision aff'd*, 468 S.E.2d 304 (S.C. 1996).  Plaintiffs may not create an ambiguity within the policy language via submission of an affidavit.  As set forth above, the face of the policy includes enforceable exclusions while still providing coverage for other claims.  They may not create an ambiguity with a conclusory affidavit.

Additionally, even if the Court sees reason to look to look outside of the language of the policy to determine the expectations of the parties, the evidence in this case directly conflicts with the assertion of Mr. Molony's affidavit.  When there is a cause to look to extrinsic evidence, Court must consider what was "contemplated by the parties." *East Bridge Lofts*, 2015 WL 12831694 at *3, *citing Isle of Palms Pest Control*, 459 S.E.2d at 321.  Here, documents produced in this matter conclusively show that Mt. Hawley provided notice of the limited coverage at the time it quoted the policies prior to their purchase.  Mt. Hawley issued quotation letters prior to the purchase of the policies to Wood Brothers, the retail broker.  (ECF Nos. 92-5 and 92-6).  Documents produced in this matter by the retail insurance agent, IOA, establish that it received the quotations setting

16

forth the limitations on the coverage of the policies before the policies were sold. *See* 2005 Correspondences from files of IOA, attached hereto as Exhibit "B." The quote containing the limitations was again provided before the Mt. Hawley Policies were renewed. *See* 2006 Correspondences from files of IOA, attached hereto as Exhibit "C".

While the Molony Affidavit is silent as to Church Creek's communications with its agent or broker at the time the policy was purchased, the knowledge of the agent and broker of the policy's limitations is imputed to Church Creek as a matter of law[4]. "A principal has constructive notice of all materials facts for which its agent, while acting in the scope of his authority receives notice." *Independence Nat'l. Bank v. Buncombe Professional Park, LLC*, 769 S.E.2d 663, 665 (2015). *See also East Bridge Lofts,* 2015 WL 12831694. In *East Bridge Lofts,* Judge Gergel found that where the broker was made aware of the insurer's refusal to cover South Carolina operations, this knowledge was imputed to the insured. *Id.* at *2-3 *citing Holmes v. McKay*, 513 S.E.2d 851, 855 (S.C. Ct. App. 1999) ("Generally, an insurance broker is an agent of the insured, and not the insurer.") (*quoting Allstate v. Smoak*, 182 S.E.2d 759, 754 (S.C. 1971) and *Hiott v. Guar. Nat. Ins. Co.*, 496 S.E.2d 417, 422 (S.C. Ct. App. 1997); and 44 C.J.S. Insurance § 262. Likewise, in this matter it is undisputed that IOA and Wood Brothers were made aware of the limitations of the coverage provided by these policies prior to their sale. Therefore, the evidence of the intention of the parties in this matter does not support any extension of coverage beyond the plain policy language.

III.     **Plaintiffs cannot establish that damage found in the Judgment is covered by either of the Mt. Hawley GL Policies.**

---

[4] Plaintiffs' own expert acknowledges that Mt. Hawley's quotations for the policies provided advance notice of the limited coverage of the policies before the policies were issued. *See* Report of Bryan Tilden, attached hereto as Exhibit "D." Mr. Tilden acknowledges that the presence of these exclusions should have been communicated to the insured by the agent. *Id.*

Before the issue of exclusions may even be addressed, Plaintiffs must meet their burden to establish that the property damage found in the judgment occurred during either of the Mt. Hawley GL Policy periods, and this is a burden that they cannot meet. It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. *Gamble v. Travelers Ins. Co*., 160 S.E.2d 523, 525 (S.C. 1968). Because the Judgment in the Underlying Lawsuit contains no finding as to when the damage began to occur, Plaintiffs cannot establish that any damage found in the Judgment occurred during the time covered by the Mt. Hawley GL Policies. In *Crossmann Communities of N.C., Inc., vs. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 603 (2011), the South Carolina Supreme Court held that a under a general liability policy each insurer covers only that portion of a loss attributable to property damage that occurred during its policy period on a *pro rata* basis. In *Crossman*, the parties stipulated that damage in question began thirty (30) days after certificates of occupancy had been issued for the subject buildings, and thus a pro rata share could be calculated among insurers. *Id*. Here, no such stipulation was made prior to the entry of the Judgment, and the Judgment contains no finding as to when Church Creek either performed work or completed the work at the Project, and makes no findings as to when property damage began to occur.[5] Plaintiffs may not create new evidence after the underlying trial regarding when the damages occurred, how they were allocated or can be divided and attributed, or the like. The South Carolina Supreme Court has disallowed such post-trial allocations or new fact determinations.

---

[5] In the Molony Affidavit, Mr. Molony asserts that Church Creek "performed work" during both policy periods and Plaintiffs imply that they are therefore entitled to the limits of both policies. (ECF No. 133-2) First, the affidavit does not set forth when damage occurred. Second, as the contents of the affidavit are not included in the findings made by the fact finder in the Judgment, it may not be used to establish coverage. *See Ellet Bros, supra*. While Mr. Molony's affidavit asserts that Church Creek performed work during both Mt. Hawley policy periods, the contract between Church Creek and the converters is dated August 18, 2006, while the first Mt. Hawley GL policy expired on October 18, 2006. Therefore, Church Creek could only have performed work for just two (2) months during the first policy period.

*Harleysville Group Ins. Co. v. Heritage Communities, Inc.,* 803 S.E.2d 288 (2017). Summary Judgment must therefore be denied.

**IV.     There are other conditions or exclusions that preclude coverage for the Judgment amount.**

While Mt. Hawley maintains that the Judgment on its face establishes that coverage is excluded by provision h.(5), h.(6), and j, there are other terms and/or exclusions that also preclude coverage[6] for all or some portion of the Judgment award under one or both of the Mt. Hawley Policies and thus, for this additional reason the Motion for Summary Judgment should be denied. These provisions include (but are not necessarily limited to): (1)  failure to comply with the requirements of the Contractors Conditions of Coverage and (2) the continuous and progressive damage exclusion (3) the Expected or Intended Injury exclusion;  and (4) the Breach of Contract Exclusion. While Mt. Hawley bears the burden to prove that exclusions apply (assuming that Plaintiffs meet their initial burden of proving coverage under the policies), on summary judgment Plaintiffs must establish that Mt. Hawley lacks any evidence as to the applicability of these exclusions. *See Builders Mutual v. Lacey*, 2012 WL 1032439 at *7. Plaintiffs' Motion makes no effort to meet this burden and therefore, summary judgment must be denied. There is evidence of the applicability of these exclusions and terms as follows:

**A.     Church Creek has failed to produce evidence that it has complied with the Contractors-Conditions of Coverage which voids coverage for this claim.**

Because Church Creek has failed to produce evidence that it complied with the Contractors-Conditions of Coverage Plaintiffs' summary judgment must be denied. The Mt. Hawley GL Policies include the following conditions:

*CONTRACTORS – CONDITIONS OF COVERAGE*

---

[6] Mt. Hawley reserves its rights to seek summary judgment on these and other grounds later, if such is necessary.

*It is hereby understood and agreed that the conditions of coverage under this policy are:*

1. *Insured warrants that it has or will obtain certificates of insurance with limits of liability equal to or greater than those provided by this policy from all subcontractors prior to commencement of any work performed for the insured.*
2. *Insured warrants that it has or will confirm that the subcontractors' insurance policies are valid and have not been cancelled prior to commencement of any work by the subcontractors performed for the insured.*
3. *Insured warrants that it has obtained or will obtain hold harmless agreements from subcontractors indemnifying against all losses from the work performed for the insured by any and all subcontractors.*
4. *Insured warrants that it has confirmed or will confirm that it is named as additional insured on all subcontractors' general liability policies.*
5. *Insured warrants that it has given or will give notice of claim to all "potential insurers" as soon as practicable."*

*"Potential insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or as an additional insured. "Potential insurers" includes the insurers of all subcontractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).*

*In the event the insured fails or failed to comply with the above conditions for a subcontractor whose work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy. Insured agrees that we need not demonstrate any prejudice to us in order to enforce these conditions of coverage.*

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms of the conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.*

**(ECF Nos. 92-1, P. 30 and 92.3, P. 30).**

Similar or identical provisions have been adjudicated enforceable in other courts. *See, e.g., Mt. Hawley Ins. Co. v. Liberato*, No. 07-CV-4368, 2010 WL 2653326, *4 (E.D. N.Y. June 25, 2010) ("Pursuant to the express terms of the endorsement, noncompliance renders void claims arising from work performed by a subcontractor."); *Mt. Hawley Ins. Co. v. Nat'l Builders, LLC*, No, 08 CIV 5526, 2009 WL 1919611, *3 (S.D. N.Y. June 30, 2009) (enforcing the endorsement);

*Mt. Hawley Ins. Co. v. Total Bldg.,* No. CV-06-24732008 WL 2757076, \*5 (holding that the violation of the conditions in the endorsement resulted in no coverage, noting that "[t]he policy language is unambiguous"); *See also Sharp Gen. Contractors, Inc. v. Mt. Hawley Ins. Co.*, 604 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009) ("[T]he policy states clearly that if [the Insured] fails to comply with the conditions in the Contractors Endorsement, then no coverage exists."); *See also Connolly Bros., Inc. v. Nat'l Fire & Marine*, No. 06cv11673-NG, 2008 WL 5432198 (D. Mass. Sept. 30, 2008) (no coverage because insured did not obtain hold harmless under the endorsement).

While discovery is ongoing in this matter, to date Church Creek has produced its project file, but it contains no documents showing that it complied with each of these conditions, which is required by the endorsement. Specifically, the construction files produced by Church Creek do not contain copies of subcontracts that contain the requisite additional insured requirements **and** hold harmless agreements for this project, although the use of multiple subcontractors on the project is clearly evidenced, and certain subcontractors were also named as defendants in the Underlying Lawsuit. Additionally, there is no evidence that Church Creek tendered the defense of the Underlying Lawsuit to any insurance carriers as an additional insured on the policy of any subcontractor involved in the project or named in the lawsuit. In its answer filed in the Underlying Lawsuit, Church Creek asserted no claims for contractual indemnity against any subcontractor by way of either a cross-claim or third-party complaint. (ECF No. 106-2). Therefore, the fact that Church Creek has failed to provide evidence of compliance with this endorsement requires that summary judgment be denied.

    **B.**    **Coverage of the Judgment Award is excluded either in whole or in part by the Continuous or Progressive Injury and Damage exclusion.**

There is a genuine issue of fact as to whether this exclusion precludes coverage for all, or at minimum some portion, of the damage found by the Judgment.  In the Additional Exclusions section of the policies, the Mt. Hawley GL Policies contain the following exclusion:

***Continuous or Progressive Injury and Damage***

*This insurance does not apply to any damages because of or related to "bodily injury," "property damage," or "personal and advertising injury":*

(a)    *Which first existed, or alleged to have first existed, prior to the inception date of this policy; or*
(b)    *Which are, or are alleged to be, in the progress of taking place prior to the inception date of this policy, even if the actual or alleged "bodily injury," Property damage," or "personal and advertising injury" continues during this policy period; or*
(c)    *Which were caused, or alleged to have been caused by the same condition which resulted in "bodily injury, " "property damage," or "personal and advertising injury" which first existed prior to the inception date of this policy.*

The Judgement contains no finding as to when the damage began and therefore  summary judgment must be denied.

**C.    The finding of a violation of SCUPTA in the Judgment precludes coverage for the Judgment**.

The Judgment makes a finding of actual damages in the amount of $11,817,596.00, which is then reduced by set-off to $11,267,596.00.  This amount was then trebled to $33,802,788.00 under the South Carolina Unfair Trade Practices Act.  S.C. Code Ann. § 39-5-10 ("SCUPTA").  Therefore, $22,535,192.00 of the award in the Judgment is clearly not property damage, but a punitive award imposed against Church Creek that is not recoverable under the insuring agreement in the policies.  The insuring agreement provide that policies will only pay sums for "bodily injury" or "property damage,".  (ECF Nos. 92-1 P. 5 and 92-3, P. 5, Section I A (1) (a)).  It does not provide that the policies will pay punitive fines imposed on the insured for willful conduct.

Additionally, the Mt. Hawley GL Policies exclude damage expected or intended from the standpoint of any insured. *Id*. at Section I A (2)(a). SCUPTA provides for treble damages where there is a deceptive act that is willful. *Id*. Because the Judgment found that the actions of Church Creek violated the act and awarded treble damages, all damage found in the Judgment has therefore been found to result from deceptive and willful conduct, and is therefore subject to this exclusion. Therefore, summary judgment must be denied.

**D.      Plaintiffs' claims arise directly or indirectly out of the breach of a contract on the part of Church Creek, and therefore the Breach of Contract exclusion contained in the Mt. Hawley GL Policies  also precludes coverage.**

In the Underlying Lawsuit claims asserted against Church Creek included Negligence, Breach of the Implied Warranty of Workmanlike Service, Breach of Implied Warranty of Habitability, and Unfair Trade Practices. (ECF No. 92-8). Church Creek has produced a contract in this matter under which it performed the work at the subject project. See, Contract Agreement, attached hereto as Exhibit "E." The Judgment makes no finding as to any particular cause of action with the exception of SCUPTA. The Mt. Hawley GL Policies contain the following exclusion:

> ***Breach of Contract***
>
> *Any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury," including the duty to defend such claim or "suit," arising directly or indirectly out of the following:*
>
> *1. Breach of express or implied contract;*
>
> *2. Breach of express or implied warranty;*
>
> *3. Fraud or misrepresentation regarding the formation, terms or performance of a contract; or*
>
> *4. Libel, slander or defamation arising out of or within a contractual relationship.*

Courts have applied this exclusion to preclude coverage for all claims for defective construction on the basis that all causes of action (including negligence) arise directly or indirectly

23

from the breach of a contract or warranty, including negligence. *See Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, No. M-10-58, 2011 WL 9169946 (S.D. Tex. June 15, 2011)(J. Crane), affirmed *per curiam*, 2012 WL 4052642 (5th Cir., Sept. 14, 2012)(Mt. Hawley had no duty to defend or indemnify because its breach of contract exclusion precluded coverage for all claims). Here, all claims arise directly or indirectly out of Church Creek's breach of its contract to perform services at Mepkin Place and/or a breach of its implied warranties. Therefore, Mt. Hawley maintains that this exclusion also applies to exclude coverage for this matter.

**V.      The Judgment is not enforceable against Mt. Hawley.**

In this matter the HOA and Church Creek are pursuing claims jointly pursuant to an Assignment. (ECF No. 23-2). Judgments resulting from settlement agreements where the insurer remains liable, but the insured is insulated from any personal liability have been repeatedly struck down as presumptively unreasonable and invalid. *See, e.g., St. Paul Travelers vs. Payne*, 444 F.Supp.2d. 519 (D.S.C. April 17, 2006)(Consent judgment resulting from a settlement agreement where insured protected by a covenant not to execute was not enforceable against insurer). Courts have also found even where the judgment resulted from a trial, where the insured's liability is extinguished, a judgment is not enforceable against an insurer. *See e.g. Great American Insurance Company vs. Hamel*, 525 S.W.3d 655 (Tx. Sup. Ct. 2017)(Judgment could not be enforced because the insured's stake in the outcome was extinguished by agreement). Here, Church Creek and the HOA are prosecuting this action jointly, and to date Church Creek has not paid any portion of the judgment which was entered over three (3) years ago. Additionally, the HOA filed this lawsuit asserting claims that belonged to Church Creek, including but not limited to bad faith on May 24, 2016, **before** the Judgment in the Underlying Lawsuit was entered on July 22, 2016. (ECF No. 1-

24

1) There is therefore an issue of fact as to the full extent, nature and duration of the agreement between Church Creek and the HOA and summary judgment should be denied.

Further, there are genuine issues of fact and law as to whether the assignment is valid and cognizable under South Carolina law, with its form leading to susceptibility to or the encouragement of collusion. *St. Paul Travelers vs. Payne,* 444 F. Supp. 2d 519, 522 (D.S.C. 2006) (Settlement agreement with insured in underlying litigation was invalid because insured was protected from a confessed judgment); *NEMLORP, LLC v. Travelers Indemnity Co., No. 2:10-cv-144-RMG, 2012 WL 13005322* (D.S.C. Feb. 9, 2012) (Settlement agreement invalid where insured assigned all of its claims to Plaintiff and held harmless so that it suffered no damage); *Peak Property and Cas. Ins. Corp. v. Davis, No. 3:12-1689-JFA, 2013 WL 1182679 (D.S.C. March 21, 2013)* (A settlement agreement where insured confessed to judgment but had no intention of paying the judgment from his own resources was found invalid); *Ecclesiastes Prod. Ministries v. Outparcel Assocs.,* 649 S.E.2d 494, 499 (Ct. App. 2007)(Settlement agreements must be scrutinized to determine their impact on the integrity of the judicial process); *Fowler v. Hunter*, 697 S.E.2d 531, 535 (2010)(In examining the validity of settlement agreements the risk of complicity must be minimized); *Hitt v. Cox*, 737 F.2d 421, 426 (4th Cir. 1984) (Insured could not seek indemnity from a carrier for "amounts that the insured does not expect to pay out of its own resources"); *Stonehenge Engineering Corp. v. Employers Ins. of Wausau*, 201 F.3d 296 (4th Cir. 2000) (4th Circuit did not uphold agreement where the insured never intended to pay amounts due on a confession of judgment out of its own resources)*In Re Air Crash at Charlotte*, NC on July 2, 1994, 982 F.Supp. 1060 (D.S.C. 1996)(Settlements where the defendant retains a financial stake in the Plaintiffs recovery are not favored).   Therefore, the Motion for Summary Judgment should be denied.

**VI.     Plaintiffs make no argument and assert no facts to support their assertion that the Mt. Hawley Excess Policies have been triggered.**

In their Motion, Plaintiffs ask for a declaration that they are entitled to a finding of coverage in the amount of $6 Million, which would constitute the Limits of all four (4) Mt. Hawley Policies, including the Mt. Hawley GL Policies.  However, Plaintiffs offer no facts and make no argument that the Mt. Hawley Excess Policies have been triggered.  Because there is no obligation under the Mt. Hawley GL Policies to pay the Judgment, the Mt. Hawley Excess Policies are also not obligated to pay the Judgment.

The insuring agreements in the Mt. Hawley Excess Policies provide:

*I.     INSURING AGREEMENT*

   *A.     Coverage*

*Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's ultimate net loss if such loss results from an occurrence insured by the policies designated in the Declarations as underlying insurance.  However, the insurance afforded by this policy shall apply: (a) only in excess of the underlying insurance; (b) only after the underlying insurance has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada.  If the underlying insurance does not pay a loss, for reasons other than exhaustion of the aggregate limit of liability, then we shall not pay such loss.*

(ECF Nos. 92-1 at P. 5 and 92-3 at P. 5)

First, because there is no coverage for this loss under the Mt. Hawley GL Policies, there is also no coverage under the Mt. Hawley Excess Policies under the language of the insuring agreement above.  This District Court has found under identical language in other excess policies issued by Mt. Hawley that where coverage for a claim is excluded under the underlying policy, there is no duty to defend or indemnify under the excess policy.  *See  FCCI Ins. Co. v. Island Pointe,  LLC*, C/A No.  2:17-1976-MBS,  2018  WL  9988661  at  *4  (D.S.C.  August  28,

26

2018)(Residential exclusion in underlying policy also excluded coverage by excess policy). As set forth herein above, there is no coverage for the Judgment entered in the Underlying Lawsuit under the Mt. Hawley GL Policies. There is therefore no obligation on the part of Mt. Hawley to pay the Judgment under the Mt. Hawley Excess Policies.

Additionally, Plaintiffs would have to establish that the Mt. Hawley GL Policies were exhausted by payment before coverage under the Mt. Hawley Excess Policies could be triggered subject to the terms and conditions in those policies. Under *Crossmann*, a time on risk analysis could be required to determine what pro-rata share of the Judgment would be covered by the Mt. Hawley GL Policies. Based on the record in the Underlying Action it is impossible for Plaintiffs to establish any property damage during either Mt. Hawley policy period and therefore Plaintiffs do not establish that a pro rata share of the Judgment under the Mt. Hawley GL Policies exhausts any applicable limit. Therefore, the Motion for Summary Judgment should be denied.

**VII.    Summary Judgment may not be awarded based on evidence outside of the pleadings, as discovery is not complete.**

As set forth above and in the Mt. Hawley Coverage Motion, it is Mt. Hawley's position that notwithstanding the Molony and Tilden affidavits, the language of the Mt. Hawley Policies and the Judgement establish that as a matter of law there is no coverage for the Judgement under the Mt. Hawley Policies. These affidavits do not even create a genuine issue of material fact regarding the central issue of the motion, which is whether the Mt. Hawley Policies provide coverage for the damages awarded in the Judgement. It would also be improper to consider the Molony Affidavit or the Tilden Affidavit in support of the Plaintiffs' Motion, because Mt. Molony and Mr. Tilden have not been deposed.

Summary judgment is appropriate only after adequate time for discovery. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996). The parties are awaiting

27

the Court's ruling on the motions for judgment on the pleadings based on the statute of limitations filed by Mt. Hawley and Evanston/Essex to determine the scope of discovery in this matter. *See* Affidavit of Robert T. Lyles, Jr. made pursuant to Fed. R. Civ. P. 56(d), attached hereto as Exhibit "F" ("Lyles Affidavit"). Because of that, the depositions of Mr. Molony and Mr. Tilden have not been taken. *Id.* Mt. Hawley therefore has not had the opportunity to depose Mr. Tilden as to the bases for his opinions, and has not had the opportunity to depose Mr. Molony as to the bases for his assertions regarding the expectations of coverage by the Mr. Hawley Policies, the facts relating to the procurement of the policies, and/or the nature, extent, and duration of the agreement by which Church Creek and other Plaintiffs are jointly pursuing the claims in this lawsuit. *Id.*

Additionally, the deadline defendants to name experts in this matter has not expired as it is contingent on the date of the Court's ruling on the pending motions for judgment on the pleadings. *See* Order (ECF No. 121) *See generally,* Lyles Affidavit. (Exhibit X) Therefore, no experts have been named by any defendant at this time to rebut the opinions of Mr. Tilden.

While Mt. Hawley contends that consideration of the Molony and Tilden affidavits is not proper to interpret the plain language of the insurance policies at issue and their application to the Judgment, to the extent Plaintiffs' motion relies on these affidavits, at the outset, the Motion is premature and should be denied on this basis alone.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion must be denied.

*(Signature page to follow)*

Respectfully submitted,

*s/Robert T. Lyles, Jr.*

Robert T. Lyles, Jr., Esq. (Fed ID 3029)
Allen Leland DuPre, Esq. (Fed ID 7252)
LYLES & ASSOCIATES, LLC
1037 Chuck Dawley Blvd., STE G100
Mount Pleasant, SC 29464
T: (843) 577-7730
F: (843) 577-7172
rtl@lylesfirm.com
ald@lylesfirm.com

**ATTORNEYS FOR DEFENDANT**
**MT. HAWLEY INSURANCE COMPANY**

CHARLESTON, SC
January 3, 2020