IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CHURCH CREEK CONSTRUCTION, LLC, KEVIN MOLONY, and LARRY ELSEY, as Assignor Plaintiffs, | ) ) ) ) | C/A:2:17-cv-01339-DCN |
| AND | ) ) | |
| MEPKIN PLACE HOMEOWNERS ASSOCIATION, LLC; LAVONIA MITCHELL, Individually and on behalf of all other similarly situated, ANDREW BLALOCK, KELLY BLALOCK, BEN YASHIK, MARTIN YASCHIK, S. EMORY BULL HIOTT, NORMA F. CALLEN, FARZAN SOODAVAR, AVINA ADAMIVAT, ROBERT P. LEDFORD, JR., CHRISTOPHER MIMS, PATRICK J. MALLARD, ERIC CROTTS. MARY GRAY, NICHOLOS HARGREAVES, JANE F. MITCHELL, JOSHUA SEARS, JULIUS MCMILLAN, LINDA MCMILLAN, STEPHANIE SLAN AND PATRICK J> MALLARD, as Assignee Plaintiffs, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| MT. HAWLEY INSURANCE COMPANY; ESSEX INSURANCE COMPANY, EVANSTON INSURANCE COMPANY, WOOD SPECIAL RISK BROKERS, LLC; JOHN DOES 1-12; and JANE DOES 1-12, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Prepared by R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
August 19, 2019

1

# PREFACE

I, R. Bryan Tilden, have been engaged by counsel to review certain materials relating to:

1. Mt. Hawley Insurance Company Policy Number MCF0002339 effective October 18, 2005 and Policy Number MCF0003229 effective October 18, 2006 ("Mt. Hawley CGL Policies");

2. Mt. Hawley Insurance Company Policy Number MXL0459733 effective October 18, 2005 and Policy Number MXL0365185 effective October 18, 2006 ("Mt. Hawley Excess Policies");

3. Essex Insurance Company Policy Number 3CU9113 effective October 18, 2007 (cancelled February 18, 2008), Policy Number 3CU9120 effective March 26, 2008, and Policy Number 3CU9140 effective March 26, 2009 ("Essex CGL Policies");

4. Essex Insurance Company Policy Number XMR24763 effective October 18, 2007 (cancelled February 18, 2008), Policy Number XMR24770 effective March 26, 2008, and Policy Number EXIGA172109 effective March 26, 2009 ("Essex Excess Policies");

issued to Church Creek Construction, LLC ("Church Creek"), and and to, in summary, provide my opinion relating to the design and structure of the policies, the actions of the retail and wholesale insurance agents or brokers, all as described in detail in this report.

I have over 45 years' experience in the insurance and risk management industry as an author, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner and consultant for both insureds and insurers. I have placed business,

as a broker representing the insured, in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British and European insurance companies. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian and European companies in the drafting, underwriting and placement of insurance policies, both marine and non-marine, and in the adjustment of property and liability losses. I teach the construction, drafting, underwriting, adjusting and analysis of policies throughout the United States, Canada, the Caribbean, Bermuda and the European Union. I have testified in the United States and London regarding the above subject matter. I am familiar with the custom and practices of the international insurance marketplace, including the London, European, Caribbean, Canadian, Bermudian and United States markets.

My curriculum vitae are attached hereto as Exhibit A. I prepared this report after reviewing the documents listed below. My billing rate for consulting expert and expert witness work is $300 an hour.[1] I do not enter legal opinions in this Report. My opinions are based on custom and practice in the industry that come to bear on this matter. These are my opinions to a reasonable degree of professional certainty. ***Because discovery is ongoing, I reserve the right to amend or supplement this report.***

## DOCUMENTS PROVIDED

1. Second Amended Complaint;

2. Mt. Hawley Insurance Company's Answer & Affirmative Defenses to Second Amended Complaint with Exhibits;

---

[1] No portion of my compensation is dependent upon the result of this litigation.

3. Answer of Defendant Insurance Office of America, Inc., to Second Amended Complaint;

4. Answer of Essex, Evanston with exhibits; and

5. Answer of Wood Special Risk Brokers to First and Second Amended Complaint.

## BACKGROUND AND OPINIONS

### *Mt. Hawley Policies*

Mt. Hawley Insurance Company ("Mt. Hawley") issued two Commercial General Liability Contractors Special Form ("Mt. Hawley CGL") with different edition dates policies to Church Creek. The New Business policy was form CGL 103 (04/05) edition. The Renewal Policy was form CGL 103 (11/05) edition. Any wording differences are noted in the analysis. This analysis compares the Mt. Hawley CGL to Insurance Services Office, Inc.'s ("ISO") Commercial General Liability Coverage Form ("CGL") in use at the time of issuance of the Mt. Hawley Policies, the December 2004 edition.

The Mt. Hawley CGL declaration pages provided limits of $1,000,000 Each Occurrence Limit, $1,000,000 Products-Completed Operations Aggregate Limit, and $2,000,000 General Aggregate Limit (Other Than Products – Completed Operations).

Two pure follow form[2] excess polices were also issued. The first, Mt. Hawley Insurance Company Policy MXL0459733[3] which was effective October 18, 2005; the second, Mt. Hawley Insurance Company Policy MXL0365185[4] which was effective October 18, 2006. Both Mt.

---

[2] "Pure Follow Form" means most, if not all, of the coverages in the underlying form are adopted but there may be variances in certain terms and/or conditions. "True Follow Form" means that every term and condition of the primary is incorporated into the excess policy – no exceptions.
[3] Form MXL 131 (05/97).
[4] Form MXL 131 (02/05).

4

Hawley Excess Policies showed a limit of $2,000,000 for the Products-Completed Operations Aggregate.

### Essex Policies

After two years with Mt. Hawley, Church Creek procured their next three renewal insurance policies from Essex Insurance Company. The first two policies utilized ISO's 2001 edition of the CGL, the last the 2007 edition.

The 2007 and 2008 Essex CGL declaration pages provided limits of $1,000,000 Each Occurrence Limit, $1,000,000 Products-Completed Operations Aggregate Limit, and $2,000,000 General Aggregate Limit (Other Than Products – Completed Operations); the 2009 Essex CGL declaration page increased the Products-Completed Operations Aggregate Limit to $2,000,000.

The Essex Excess policies, like Mt. Hawley, were pure follow form. They provided a $2,000,000 each occurrence and aggregate policy limit. The Essex Excess policy was different from the Mt. Hawley policy in this design of coverage. The Mt. Hawley Excess policies had aggregates same as underling, where the Essex Excess policies had a single aggregate.

### ISO Circular

On December 13, 1988, Insurance Services Office, Inc., ("ISO") issued a circular entitled "AGGREGATE LIMIT FOR PRODUCTS/COMPLETED OPERATIONS HAZARD COVERAGE EXPLAINED. It is attached, in whole, as Exhibit B to this report. This circular describes alternatives to showing a Products-Completed Operations Aggregate on the declarations page if it is excluded.

Three scenarios were discussed in this circular. In these scenarios, zero (0) or the words "coverage does not apply" would be entered in the Products/Completed Operations Aggregate Limit space on the declarations page was an option. Neither Mt. Hawley or Essex chose to avail itself of this option, and instead, showed a limit of $1,000,000[5] for the Products-Completed

---

[5] Essex's final policy showed a $2,000,000 Products/Completed Operation Aggregate Limit.

Operations Aggregate Limit, even though the analysis that follows concurs with Mt. Hawley's statement of their quotation and shows that coverage does not exist for products-completed operations.[6] In conjunction with the operations exclusions, the Mt. Hawley and Essex policies would cover a trip and fall incident of a visitor in the contractor's office, but not contracting operations.

### Summary of Opinions

In the five pure follow form excess policies, the insuring agreement states that the loss must result form an occurrence insured by the underlying insurance. The first two Mt. Hawley Excess Policies scheduled the Mt. Hawley CGL Policies as the underlying insurance; the last three Essex Excess Policies scheduled the Essex CGL Policies as the underlying insurance. The insuring agreement makes it clear that if the underlying insurance does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then the Mt. Hawley or Essex excess policies will not pay the loss.

The four Mt. Hawley policies (two primary and two excess) and the six Essex policies (three primary and three excess) were cleverly crafted, despite the limits shown on the Declarations, to exclude the competed operations of the Named Insured, Church Creek Construction, LLC. A typical insured in the United States would be unable to discern how needed coverage was excluded in spite of a limit being shown on the declarations page.

Mt. Hawley, in their quotation letters to Wood Special Risk Brokers LLC, stated "this policy does not provide any coverage, and we will not defend any claim for damages, arising out of property damage attributed to products or completed operations."[7] As a term of art, statements on a quotation such as this are termed "subjectivities," and will be reference as such in this report.[8] In spite of this statement, Mt. Hawley chose to show a limit of $1,000,000 for the Products-

---

[6] As to Essex, the record reviewed did not include a statement as to the limitation of coverage.
[7] Exhibit E, Mt. Hawley answer.
[8] There are other subjectivities in the quotation, including requirements prior to binding coverage.

Completed Operations Aggregate Limit on the declarations page.  It is unclear if Essex made the wholesale or retail insurance agent aware of the lack of coverage, in spite of the limit shown.

It is unclear, based on the evidence reviewed to date, if the subjectivities on the quotation was communicated to the retail insurance agent, Insurance Office of America, Inc.  Finally, it is unclear, based on the evidence reviewed to date, if the subjectivities were communicated to Church Creek Construction, LLC.  It is the custom and practice of the insurance industry to communicate any subjectivities found on a quotation letter.  It would place the insured on notice of coverage the coverage restrictions and requirements prior to binding in clear language.

If the wholesale broker did not convey to the retail agent the statement that the policy provides no property damage for completed operations, this would be a deviation of the standard of care required.  Likewise, if the retail agent did not convey to the insured the statement that the policy provides no property damage for completed operations, it would also be a deviation of the standard of care required.

### Mt. Hawley Exclusions

While discussed in detail in the following analysis, the exclusions can be grouped as follows:

1. Excluding construction operations:

    a. "That particular part" exclusion (excludes not only the part *being* worked on, but also resulting damage); and

    b. Loss of use of "impaired property", even if sudden or accidental.

2. Excluding completed operations:

    a. Alienated premises exclusion (premises that were built by or on behalf of the named insured on speculation or on a turnkey basis);

b. "That particular part" exclusion (excludes not only the part *that was* worked on, but also resulting damage);

c. Faulty workmanship exclusion, that excludes not only the faulty work, but also resulting damage;

d. Damage to your product exclusion, in making a building or structure a product;

e. Damage to your work exclusion, excluding all work performed by the insured or subcontractors; and

f. Loss of use of "impaired property", even if sudden or accidental.

In Mt. Hawley's Sixth Affirmative Defense, numerous exclusions we included. Each exclusion cited are compare against the ISO policy.

**Expected or Intended Injury**

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| a. **Expected or Intended Injury**<br><br>"Bodily injury" or "property damage" expected or intended from the standpoint of *the* insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. | a. **Expected or Intended Injury**<br><br>"Bodily injury" or "property damage" expected or intended from the standpoint of *any* insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. |

The tendency of the courts to evaluate the accidental nature of the insured's conduct and the injury arising out of it in terms of whether it was expected or intended led to the movement from accident- to occurrence-based coverage. Endorsements were issued to change accident policies to occurrence policies until the 1966 revisions included the occurrence concept in the standard CGL form.

8

The prerequisite that the property damage or bodily injury be unintended and unexpected by the insured was moved from the "occurrence" definition of the 1966[9] and 1973[10] editions of the policy into an exclusion within the 1986 and subsequent editions.

The 1986 breakup of "occurrence" into a definition essentially stating that it is an accident, plus a separate exclusion for expected or intended property damage, has had little effect on the manner in which the occurrence requirement is applied by the industry or is interpreted by the courts.

The impact of the Mt. Hawley difference is found in Condition 7, Separation of Insureds. It states:

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| 7. **Separation Of Insureds.**<br><br>Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:<br><br>  **a.** As if each Named Insured were the only Named Insured; and<br><br>  **b.** Separately to each insured against whom claim is made or "suit" is brought. | 7. **Separation Of Insureds.**<br><br>Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:<br><br>  **a.** As if each Named Insured were the only Named Insured; and<br><br>  **b.** Separately to each insured against whom claim is made or "suit" is brought. |

The separation of insureds condition of the current CGL forms is also known as the severability of interests clause. As a matter of interest and historical significance, this provision was first introduced with the commercial auto policies in 1955, and with the CGL policy provisions in 1966. While there is no condition by the same name in the 1973 policy, the content of this provision appears within the definition of insured in the 1973 jacket. So, with the exception of the

---

[9] An accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*

[10] An accident, including injurious exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.* "During the policy period" was moved to the definition of property damage.

limits of insurance and the duties specifically assigned to the first named insured, the insurance applies as if each named insured were the only named insured and separately to each insured against whom claim or suit is brought.

With Mt. Hawley changing the word "the" to "any", the exclusion is broadened. If any insured intentionally injures property, then all insureds are excluded, even innocent co-insureds.

**Contractual Liability**

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| **b.  Contractual Liability**<br><br>"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:<br><br>**(1)**  That the insured would have in the absence of the contract or agreement; or<br><br>**(2)**  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes  of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:<br><br>**(a)**  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and<br><br>**(b)**  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged. | **b.  Contractual Liability**<br><br>"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a *written or oral* contract or agreement.  This exclusion does not apply to liability for damages:<br><br>**(1)**  That the insured would have in the absence of the contract or agreement; or<br><br>**(2)**  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes  of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:<br><br>**(a)**  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and<br><br>**(b)**  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged. |

The purpose of contractual liability coverage is to cover the liability of third parties assumed by the insured in contractual agreements, particularly hold harmless or indemnification agreements.  It does not provide coverage to an insured for its own liability arising out of breach of contract.

The general scope of contractual liability coverage, as applied to defective work claims, is that a CGL policy provides coverage for the insured's obligation to indemnify the third party (the

11

"indemnitee") for property damage arising out of its performance of the contract of which the indemnity agreement is a part. While exclusion b., the contractual liability exclusion, purports to exclude for all liability *assumed* by contract, except liabilities assumed in an "insured contract." The "insured contract" swallows the exclusion for most claims involving the construction industry. This is because that definition includes indemnity agreements in which the insured assumes the tort liability of another.

**Damage to Property**

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| **j.** **Damage to Property**<br><br>"Property damage" to:<br><br>**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;<br><br>**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;<br><br>*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*<br><br>**(3)** Property loaned to you;<br><br>**(4)** Personal property in the care, custody or control of the insured;<br><br>**(5)** That *particular* part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or<br><br>**(6)** *That particular part of* any property that must be restored, repaired or replaced because "your work" was incorrectly performed *on it*.<br><br>Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.<br><br>Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.    *[continued on next page]* | **h.** **Damage To Property**<br><br>"Property damage" to:<br><br>**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;<br><br>**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;<br><br>*[ISO wording moved up to this location for analysis]*<br><br>**(3)** Property loaned to you;<br><br>**(4)** Personal property in the care, custody or control of the insured;<br><br>**(5)** That part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf *have performed or* are performing operations, if the "property damage" arises out of those operations; or<br><br>**(6)** Any property that must be restored repaired or replaced because "your work" was incorrectly performed.<br><br>Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven *(7)* or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III – LIMITS OF INSURANCE.**<br><br>Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.    *[continued on next page]* |

| | |
|---|---|
| Paragraph **(6)** _does not apply_ to "property damage" included in the "products-completed operations hazard." | Paragraph **(6)** _of this exclusion only applies_ to "property damage" included in the "products-completed operations hazard." |

The Mt. Hawley modifications to this exclusion, while subtle, in essence exclude contracting operations and completed operations. The various differences between the ISO and Mt. Hawley forms follow, in order of the exclusion.

**Alienated Premises Exclusion**

The alienated premises exclusion, "**(2)** Premises you sell, give away or abandon, . . ." has been in standard forms since 1941. Basically, the exclusion is intended to deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect in the premises at the time of sale.

In _Maryland Casualty Co. v Reeder,_ 221 Cal App 3d 961, 270 Cal Rptr 719 (1990), the insureds sought coverage as an individual developer and other entities that participated in the construction and sale of a condominium project. In this case, the record before the court indicated that much of the work had been subcontracted out at that the insureds had purchased broad form property damage coverage. The court determined that the application of the alienated premises exclusion would rob the developer of any benefit whatsoever under the policy.

The unfairness arising from the application of the alienated premises exclusion to developers and contractors that resulted in opinions such as _Reeder,_ in which courts went to great lengths to avoid the exclusion, led ISO to deal with the problem in the 1986 revision to the CGL insurance form.

The ISO CGL now provides that the exclusion does not apply if the "premises are "your work" or were never occupied, rented or held for rental by you." In other words, the exclusion does not apply if the premises were built by or on behalf of the named insured on speculation or

14

on a turnkey basis, i.e., where the insured contractor or developer has never occupied, rented, or held the property for rental.

Mt. Hawley, on the other hand, does not have the exception to the exclusion. The effect is that the Mt. Hawley policy would exclude premises were built by or on behalf of the named insured on speculation or on a turnkey basis. By definition, this claim would fall into the "products-completed operations hazard."

**Exclusion of "that particular part"**

ISO exclusion **j.(5)**, which is identical in the 1986 and subsequent CGL forms, applies only to real property. The "particular part" exclusionary wording is intended to be a limited care, custody or control exclusion precluding coverage only for the damage to property on which the insured is actually working at the time of loss. Also excluded is property damage caused by subcontractors of the insured while they are actually working on the property. Where damage caused by the insured in the performance of operations goes beyond damage to the property where the insured is working, this section limits the exclusion to the particular part on which the insured is working at the time of loss.

Mt. Hawley make two key revisions to this exclusion. First, by deleting "particular" in the exclusion, there is a drastic reduction in coverage. Unlike the ISO version, if the insured service contractor who, while repairing an air-conditioning unit for a customer, causes a short circuit that results to fire damage to the customer's home as well as the unit, there would be no coverage for the resulting damage. In the ISO version, the contractor would be covered for damage to the home but not the air conditioner on which the contractor was working. The ISO exception may in fact be broader, excluding only the part of the air conditioner on which he was working.

The second key revision to the exclusion is in adding "have performed" to the exclusion. In the ISO exclusion, the insured has to be performing operations so as to bring the exclusion into play. "Have performed," being in the past tense, would refer to work already completed. This

additional wording would make the exclusion apply to not only the operations phase, but also under the "products-completed operations hazard."

**Faulty Workmanship Exclusion**

The 1973, 1966, and earlier CGL policies did not contain faulty workmanship exclusion, but instead relied on the care, custody, or control exclusion and the work performed exclusion to preclude coverage for claims against the insured for poorly or incorrectly performed work. The current ISO exclusion precludes coverage for property damage to that particular part of any property where it can be established that the property damage was the result of faulty workmanship by the insured or its subcontractor. Since the term "your work" is relied on in the exclusion to establish the exclusion's application, a comparison follows.

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| **22.** "Your work": | **22.** "Your work": |
| **a.** Means: | **a.** Means: |
| **(1)** Work or operations performed by you or on your behalf; <br><br> and | **(1)** Work or operations performed by you or on your behalf, *including but not limited to work by contractors or subcontractors directly or indirectly on your behalf*; and |
| **(2)** Materials, parts or equipment furnished in connection with such work or operations. | **(2)** Materials, parts or equipment furnished in connection with such work or operations. |
| **b.** Includes: | **b.** Includes: |
| **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and | **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and |
| **(2)** The providing of or failure to provide warnings or instructions. | **(2)** The providing of or failure to provide warnings or instructions. |

The ISO faulty workmanship exclusion applies only to the particular part that must be replaced or repaired as a result of faulty workmanship on that part of the work. In other words, as with the exclusion of "that particular part" on which operations are being performed, discussed

above, resulting damage to work that is not faulty is covered. Assume, during construction, because the roofing work was poorly performed, there is a leak and partially installed flooring is damaged. In the ISO version, the damage to the floors would be covered, but replacement of the poorly constructed roof would be excluded. Mt. Hawley, however, excludes both the defective and non-defective work, in deleting "that particular part" and "on it."

The ISO version specifically states that this exclusion does not apply to property damage included in the products-completed operations hazard. The 1983 and subsequent CGL forms rely on this exclusion to address course of construction exposures and the "your work" exclusion, discussed later, to address the completed operations exposure,

Mt. Hawley, in contrast, makes this exclusion apply to the products-completed operations hazard. In conjunction with the "your work" exclusion, there would be no coverage for a contractor in the products-completed operations hazard for damage to their work or any property (real or personal) as a result of their faulty work.

17

### Damage Arising out of Your Product (i)

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| **k.  Damage to Your Product**<br><br>"Property damage" to "your product" arising out of it or any part of it. | **i.  Damage Arising Out Of Your Product**<br><br>"Property damage" to "your product" _or any other property_ arising out of it  _or in any way related to "your product"_ or any part of it.  _This exclusion only applies to "property damage" included in the "products-completed operations hazard."_ |

This exclusion specifically references "your product".  The definition states:

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| **21.** "Your product":<br><br>**a.**  Means:<br><br>**(1)** Any goods or products_, other than real property,_ manufactured, sold, handled, distributed of disposed of by:<br><br>**(a)** You;<br><br>**(b)** Others trading under your name; or<br><br>**(c)** A person or organization whose business or assets you have acquired; and<br><br>**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.<br><br>**b.**  Includes:<br><br>**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and<br><br>**(2)** The providing of or failure to provide warnings or instructions<br><br>**c.**  Does not include vending machines or other property rented to or located for the use of others but not sold. | **21.** "Your product":<br><br>**a.**  Means:<br><br>**(1)** Any goods or products manufactured, sold, handled, distributed of disposed of by:<br><br>**(a)** You;<br><br>**(b)** Others trading under your name; or<br><br>**(c)** A person or organization whose business or assets you have acquired; and<br><br>**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.<br><br>**b.**  _"Your product"_ includes:<br><br>**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and<br><br>**(2)** The providing of or failure to provide warnings or instructions<br><br>_(3)_ Does not include vending machines or other property rented to or located for the use of others but not sold. |

Damage to the insured's products exclusion was first introduced in the 1955 CGL. It was revised in 1966, when completed operations was introduced, but the exclusion was not changed when the form was revised again in 1973.

The 1966 revision sought to distinguish between the exposures faced by product manufacturers and those faced by service providers. Prior to that time, a single exclusion applied to both service providers and product manufacturers. The 1966 revision separated the two exposures out of the damage to products exclusion and the work performed exclusion. In addition, the 1966 revision set out new definitions that separately defined "named insured products" and the "completed operations hazard." These definitions were retained in the 1973 revision until 1986, when the differentiation between products and services were maintained with the definitions of "your work" and "your product."

The current ISO exclusion is routinely applied to manufacturers in their production of products. Most case law applying to the ISO damage to products exclusion has made it clear that the exclusion denies coverage only for property damage to the insured's product and not damage to property other than the insured's product that is damaged as a result of a defect in the insured's product.

The specific exception of real property in the ISO version under part a. makes it clear that work performed by contractors on buildings, structures or other realty is not considered to be the named insured's product.

Mt. Hawley is using the injury to products exclusion of the 1973 CGL to deny completed operations losses that would otherwise have been covered under an ISO policy. In essence, the deletion of "other than real property" from the definition would make this exclusion apply to construction defect claims.

**Damage Arising Out of Your Work**

| ISO (12/04) | | Mt. Hawley (04/05) | |
|---|---|---|---|
| I. | **Damage to Your Work**<br><br>"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."<br><br>_This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor._ | j. | **Damage Arising Out Of Your Work**<br><br>"Property damage" to "your work" _or any other property,_ arising out of it _or in any way related to "your work"_ or any part of it. _This exclusion only applies to "property damage" included in the products-completed operations hazard."_ |

The intent of early CGL policies was to insure against liability for bodily injury or property damage arising from a contractor's or other service provider's work, while excluding the business risk of damage to the work itself. The early exclusion did not differentiate between property damage occurring during the course of construction – operations losses – and property damage occurring once the project has been completed – completed operations losses. Thus, the early exclusions applied to both of those hazards.

By 1969 there were two versions of the standard Broad Form Property Damage ("BFPD") endorsements available; (1) Broad Form Property Damage Endorsement **Excluding** Completed Operations (Advisory Endorsement 3005) and (2) Broad Form Property Damage Endorsement **Including** Completed Operations (Advisory Endorsement 3006).

The 1986 revision to the ISO CGL eliminated the BFPD endorsement and made the extensions of coverage formerly provided by the Broad Form Property Damage Endorsement **Including** Completed Operations an element of the standard coverage. However, the drafters were careful to maintain the same degree of coverage arising out of subcontractors' work.

The definition of 'your work" _(see page 16)_ includes work performed by or on behalf of the named insured. In the completed operations context, the ISO work performed exclusion would preclude coverage for property damage arising out of work performed by or on behalf of the

20

named insured if the exception to the exclusion was not applicable.  The exception makes it clear that the exclusion does not apply to work performed by or on behalf of the named insured by subcontractors.

Even though construction defects are considered business risks and not covered under the liability policy of the contractor who performed the work, coverage still can apply whenever an insured (a general contractor, for example) uses subcontractors.  Coverage may apply, for example, to:

1.  Damage to the general contractor's work arising out of a subcontractor's work;

2.  Damage to a subcontractor's work; or

3.  If the insured is a subcontractor, damage to a general contractor's work or another subcontractor's work.

This exception concerning work performed by subcontractors was the leading reason construction defects were held to be covered under the policies of general contractors.  To combat many of these cases, ISO introduced two endorsements in 2001.[11]  The ISO blanket exclusion states:

---

[11] CG 22 94 on a blanket basis, CG 22 95 on a site-specific basis.

21

·

**COMMERCIAL GENERAL LIABILITY**
**CG 22 94 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2.  Exclusions**

This insurance does not apply to:

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**CG 22 94 10 01**                    © ISO Properties, Inc., 2000                    **Page 1 of 1**

This is a blanket-type endorsement that amends exclusion **l.** by deleting the subcontractor exception for all exposures.  The impact, therefore, is to virtually eliminate broad form property damage coverage for the completed operations hazard.  Mt. Hawley's policy deleted the exception to the exclusion, versus attaching an endorsement to highlight that an exclusion has been added. In summary, the Mt. Hawley policy based on this exclusion excludes all property damage in the completed operations phase done by the insured or subcontractors.

**Damage to Impaired Property or Property Not Physically Injured**

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| m. **Damage to Impaired Property or Property Not Physically Injured**<br><br>"Property damage" to "impaired property" or property that has not been physically injured arising out of:<br><br>(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or<br><br>(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.<br><br>*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.* | k. **Damage to Impaired Property or Property Not Physically Injured**<br><br>"Property damage" to "impaired property" or property that has not been physically injured arising out of:<br><br>(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or<br><br>(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. |

A version of the failure to perform exclusion has been part of the standard CGL since 1966. The exclusion was designed to eliminate coverage for bodily injury or property damage arising from design or planning, unless there was an active malfunctioning of the product or work. Another purpose was to strike at those court cases that continued to uphold coverage for claims that did not involve physical injury to property.

23

The current ISO language applies to two different types of property damage – impaired property and property that has not been physically injured.

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| 8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:<br><br>  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or<br><br>  b. You have failed to fulfill the terms of a contract or agreement.<br><br>If such property can be restored to use by:<br><br>  a. The repair, replacement, adjustment or removal of "your product" or "your work;" or<br><br>  b. Your fulfilling the terms of the contract or agreement. | 8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:<br><br>  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or<br><br>  b. You have failed to fulfill the terms of a contract or agreement.<br><br>If such property can be restored to use by:<br><br>  a. The repair, replacement, adjustment or removal of "your product" or "your work;" or<br><br>  b. Your fulfilling the terms of the contract or agreement. |

This term "impaired property" appears to be primarily directed at exclusion of loss of use damages, in that it means tangible property other than the insured's product or work that cannot be used or is less useful. In addition to excluding coverage for property damage to "impaired property," the exclusion also denies coverage for property that has not been physically injured. So, now more than ever, the exclusion appears to be directed at denial of coverage for diminution in value claims where there has been no loss of use of property that has neither been physically injured nor destroyed.

In the event that the insured's product or work causes physical injury to tangible property, it would not qualify as "impaired property" under the definition. This is because where the product or work causes physical injury to property, it is most likely not possible to restore the property to use by merely replacing the insured's product or work (because the other property must be

repaired or replaced). Thus, the exclusion will not apply to such property because it is not impaired and because the property has been physically injured.

Mt. Hawley deleted the exception with regard to "sudden and accidental." In the ISO version, the exception applies only if the loss of use of property arising out of sudden and accidental injury that occurs after the insured's product or work has been put to its intended use, i.e., after completion. Loss of use during operations would be excluded, but within the products-completed operations hazard, loss of use would be covered due to the sudden and accidental exception. Mt. Hawley's wording would exclude loss of use in both the operations and products-completed operations hazard.

**Sistership Exclusion**

| ISO (12/04) | Mt. Hawley (04/05) |
|---|---|
| n. **Recall of Products, Work or Impaired Property**<br><br>Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:<br><br>(1) "Your product;"<br><br>(2) "Your work;" or<br><br>(3) "Impaired property;"<br><br>if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. | l. **Recall of Products, Work or Impaired Property**<br><br>Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:<br><br>(1) "Your product;"<br><br>(2) "Your work;" or<br><br>(3) "Impaired property;"<br><br>if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. |

The sistership exclusion was added to the CGL in 1966, and was retained in the 1973 edition. In the 1986 revision, the prior exclusion was left mostly intact, and has not been changed since. As compared with the earlier editions, two minor changes were made. They involved the inclusion of the impaired property concept and the broadening of the exclusion to recalls initiated

by other organizations.[12]  The 1986 revision indicates that the exclusion applies where the product, work, or property is withdrawn or recalled from the market or from use by any person or organization.  Since "impaired property" is basically defined as tangible property other than the insured's defective product or work that incorporates the insured's defective product or work, it appears that this addition is intended to deny coverage for the withdrawal of a larger product or work of which the insured's defective product or work is but a component.

By its very nature, since it excludes coverage for the expenses of recalling or withdrawing products from the market, the exclusion has little application to construction-related claims.

### Essex CGL Policy

Essex took a different approach in the creation of their policy.  Legislative involvement in construction defect coverage kicked off in May 2010, when the Colorado General Assembly enacted C.R.S.A. § 13-20-808.  In 2011, three states[13] followed Colorado's lead and adopted legislation directly in response to court decisions in their states that they believed did not provide adequate coverage to contractors for construction defects.  All of these statutes addressed whether the defined term "occurrence" covers faulty workmanship.

Essex included a Combination Contractors Endorsement[14] on all three of the CGL Policies that revises the definition of "Occurrence".  In essence, this revision would not only exclude defective construction, but also exclude consequential damages to otherwise non-defective components resulting from negligent or defective construction.

The endorsement also deletes the last paragraph in Exclusions J., Damage to Property, and L., Damage to Your Work in their entirety.  The impact of this deletion follows:

| ISO (12/04) | Essex Combination Contractors Endt. |
| --- | --- |

---

[12] In prior editions, the court found that the exclusion applied only if the named insured withdraws the product from the marketplace.  The 1966 and 1973 exclusions were drafted before the Consumer Products Safety Commission was created in 1972.

[13] Haw. Rev. Stat. § 431:1(a); Ark. Code §23-79-155(a)(2); and S.C. Code 38-61-70.

[14] M/E-043 (01/05) for the first policy; & (09/07) for the second and third policies.

| j. | **Damage to Property** | j. | **Damage To Property** |
|---|---|---|---|
| | "Property damage" to: | | "Property damage" to: |
| | **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. | | **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. |
| | _Paragraph **(6)** does not apply to "property damage" included in the "products-completed operations hazard."_ | | |
| **ISO (12/04)** | | **Essex Combination Contractors Endt.** | |
| l. | **Damage to Your Work** | l. | **Damage to Your Work** |
| | "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." | | "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." |
| | _This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor._ | | |

Just like Mt. Hawley, Essex makes exclusion **J.**, Damage to Property, apply to the products-completed operations hazard. ISO Endorsement 22 94, previously discussed, amends exclusion **l.** by deleting the subcontractor exception for all exposures. The impact, therefore, is to virtually eliminate broad form property damage coverage for the completed operations hazard. Just like Mt. Hawley, Essex deleted the exception to the exclusion, versus attaching an endorsement to highlight that an exclusion has been added. The Essex policy excludes all property damage in the completed operations phase done by the insured or subcontractors. In conjunction with the "occurrence" definition, there would be no coverage for a contractor in the products-completed operations hazard for damage to their work or any property (real or personal) as a result of their faulty work.

Contractual Liability Limitation, CG 21 39 10 93, was attached to all three Essex CGL Policies. This endorsement removes the "tort liability assumed" inclusion in an unendorsed ISO CGL. Essex also attached a Combination General Endorsement. The endorsement states "**III.**

27

This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied – in fact contract.  This additional exclusion would remove the tort-based coverage found in the definitions of Your Product and Your Work:

| ISO (12/04) | ISO (12/04) |
|---|---|
| **22.** "Your work": <br><br> **a.** Means: <br><br>    **(1)** Work or operations performed by you or on your behalf; and <br><br>    **(2)** Materials, parts or equipment furnished in connection with such work or operations. <br><br> **b.** Includes: <br><br>    **(1)** <u>Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and</u> <br><br>    **(2)** The providing of or failure to provide warnings or instructions. | **21.** "Your product": <br><br> **a.** Means: <br><br>    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed of disposed of by: <br><br>      **(a)** You; <br><br>      **(b)** Others trading under your name; or <br><br>      **(c)** A person or organization whose business or assets you have acquired; and <br><br>    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. <br><br> **b.** Includes: <br><br>    **(1)** <u>Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and</u> <br><br>    **(2)** The providing of or failure to provide warnings or instructions <br><br> **c.** Does not include vending machines or other property rented to or located for the use of others but not sold. |

The 1966 and 1973 CGL Contractual Liability exclusion stated that the exclusion "does not apply to a warranty of fitness or quality of the named insured's products or warranty that work performed by or on behalf of the insured will be done in a workmanlike manner."  In the 1986 CGL, this excepting was omitted, and when the coverage difference was pointed out, was moved to the definition of "Your Product" and "Your Work" in the 1988 edition.  The warranties or

representations to be included would be tort based, such as warranty of fitness for particular use or warranty of habitability. With the addition of the Essex exclusion, these types of claims would also be excluded.

### Known Loss or Injury

_SC._

A California court's opinion adopting a "continuous injury" trigger[15] of coverage has resulted in revisions to the CGL. The ruling in *Montrose Chemical Corp. v. Admiral Insurance Co., 10 Cal 4th 645 (1995)* set forth two general principles:

1. The proper trigger of coverage to be applied under a liability policy where injury or damage is continuous or progressively deteriorating over successive policy periods is the continuous injury or multiple trigger.

2. The loss is progress rule, which holds that coverage is not applicable when a loss is known or apparent before issuance of a policy, did not always operate to bar potential coverage or the insurer's defense obligation.

ISO, in September of 1999, introduced CG 00 57 09 99 Amendment Of Insuring Agreement – Known Injury or Damage. The endorsement was mandatory, and has been included in the insuring agreement in the ISO CGL in subsequent revisions. In the ISO version, an insured or authorized employee *had to know* of the "bodily injury" or "property damage" at the inception of the policy for the CGL policy *not to apply*.

Mt. Hawley and Essex took another approach for known losses. Mt. Hawley, in the policy added continuous or progressive injury and damage as an exclusion.[16] Essex, in their Combination Contractors Endorsement,[17] also added an exclusion for continuous or progressive

---

[15] It appears that South Carolina has "adopted a modified continuous trigger theory for determining when coverage is triggered under a standard occurrence policy." *Crossman Communities of N.C., Inc. v. Harleysville Mut. Ins. Co., 717 W.E.2d 589* (S.C. 2011). For latent injury or damage, it appears injury-in-fact would apply. *Spartan Petroleum Co., Inc. v. Federated Mut. Ins. Co.,* 162 F.3d 805, 810-11 (4th Cir. 1998) (applying South Carolina law).
[16] CGL 104 (04/05) Page 9 of 18.
[17] M/E-043 (01/05) Page 1 of 2.

29

injury.   Unlike the ISO CGL, these exclusions are not based on **knowledge** of the insured, but rather the existence of damage.   This wording nullifies much of the coverage that insureds seek when purchasing liability insurance on an occurrence basis, or a claims-made basis with an open retroactive date.   To be quite frank, this approach "guts" coverage in ways never before seen in the occurrence/offense liability format.

### Essex CGL and Excess Policy

In addition to incorporating the terms and conditions of the underlying policy, the Essex CGL[18] and Excess[19] Policies included a professional service exclusion.   This is a subtle exclusion would exclude some of the so-called "incidental" professional services within construction means, methods, techniques, sequences or procedures employed by a construction contractor.[20]

Unlike Mt. Hawley's exclusion[21], there is no exception for the means, methods, techniques, sequences and procedures.

_____

R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

_____

[18] ME-001 (01/07), Exclusion 8, Page 1 of 3; ME-001 (09/07), Exclusion VI, Page 1 of 2; ME-008 (01/09).
[19] MRE266 (04/07), Exclusion 7, Page 3 of 5.
[20] A case on point is *Harbor Insurance Company v. OMNI Construction Company*, 912 F.2d 1520 (U.S. Ct. App. 1990).
[21] CGL 103 (11/05) Page 10 of 19.